637 A.2d 300

**Holly VAZQUEZ and Angel Vazquez, Husband and Wife, Appellants,**

**v.**

**M.J. FRIEDBERG, M.D.**

Superior Court of Pennsylvania.

Argued Sept. 22, 1993.

Filed Feb. 10, 1994.

524

Christopher Gittinger, Allentown, for appellants.

John R. Hill, Allentown, for appellee.

Before McEWEN, DEL SOLE and HOFFMAN, JJ.

HOFFMAN, Judge:

This is an appeal from an order entered March 8, 1993, granting appellee's, M.J. Friedberg, M.D., motion for partial summary judgment, thereby striking the second count of appellants', Angel and Holly Vazquez, complaint and removing appellant, Holly Vazquez, from the action. Appellants present the following issues for our review:

1. Does the law of the Commonwealth of Pennsylvania recognize a cause of action for loss of consortium in a negligence case where the negligent act occurred prior to the date of marriage, but neither the negligence nor any injury or damages were discovered until after the date of the marriage?

2. Did the Court of Common Pleas of Lehigh County commit an error of law in determining that the plaintiff, Holly Vazquez, did not have a valid cause of action for loss of consortium?

Appellants' Brief at 3. For the following reasons we reverse the order of the trial court.

In reviewing an order granting summary judgment, an appellate court "must accept as true all well pleaded facts in the non-moving party's pleadings, giving the non-moving party the benefit of all reasonable inferences to be drawn therefrom." *Askew By Askew v. Zeller,* 361 Pa.Super. 35, 37, 521 A.2d 459, 461 (1987) (citation omitted).

Applying this standard of review, the relevant facts are as follows. In late July, 1976, appellee, M.J. Friedberg, M.D., performed surgery on appellant, Angel Vazquez, for an inguinal hernia. During the course of the operation, appellee discovered that Mr. Vazquez' left testicle was atrophic. Ap-

pellee performed the herniography and surgically lowered the testicle.[1]

In May of 1987, appellants, Angel and Holly Vazquez were married. Two years later, in September of 1989, a cancerous lump was discovered in the location of the surgically lowered testicle. Mr. Vazquez underwent two surgical procedures and chemotherapy in a failed attempt to remove the cancer.

On April 12, 1991, appellants initiated an action against appellee. The first count of the complaint charges appellee with several acts of negligence which appellant, Mr. Vazquez alleges resulted in his contracting cancer, suffering a heart attack, and sterility. Appellant, Mrs. Vazquez, charges appellee with loss of consortium, in the second count of the complaint.

On May 28, 1992, appellee filed a motion for partial summary judgment against Mrs. Vazquez. The court granted appellee's motion and dismissed Count II of appellants' complaint on March 9, 1993. Appellants filed a motion for reconsideration which was subsequently denied. This timely appeal followed.

Appellant contends that the trial court erred in determining that appellant, Holly Vazquez did not have a cause of action for loss of consortium where the negligent act occurred before the marriage but was not uncovered until after the marriage. Essentially, the issue before this court is whether a latent or hidden medical malpractice injury giving rise to a claim for loss of consortium is defined at the time of the negligent act or when the subsequent harm occurs.

■ A claim for loss of consortium cannot lie where the injury is inflicted prior to the marriage.[2] *Jackson v. Travelers Ins. Co.*, 414 Pa.Super. 336, 344, 606 A.2d 1384, 1388 (1992)

---

1. Appellants assert that appellee should have removed the atrophic testicle. *See* Appellants' Complaint at 3.

2. This rule effectively prevents a person from bringing a cause of action for an injury to her spouse, of which she was or should have been aware at the time of marriage.

(citation omitted); *Sprague v. Kaplan,* 392 Pa.Super. 257, 260, 572 A.2d 789, 790 (1990).

Typically, a cause of action in negligence and a spouse's loss of consortium claim arise simultaneously with or in close temporal proximity to both the negligent act and the injury. However, where the discovery rule applies to the underlying cause of action, a spouse's loss of consortium claim is not tolled until the statute of limitation for the underlying cause of action begins to run. *Berardi v. Johns–Manville Corp.,* 334 Pa.Super. 36, 44, 482 A.2d 1067, 1071 (1984) (citations omitted).[3] At its core, the discovery rule distinguishes between the negligent act and any possible ensuing injuries. *Donnelly v. DeBourke,* 280 Pa.Super. 486, 492, 421 A.2d 826, 829 (1980) (citations omitted) (in medical malpractice cases, the discovery rule tolls the operation of the statute of limitations from "the date the injury-causing event occurs [to] the date the injury is or reasonably should have been 'discovered' "). The rule recognizes that although a negligent act and the injury can happen almost simultaneously, there are situations where the injury may manifest itself subsequently. *Ayers v. Morgan,* 397 Pa. 282, 290, 154 A.2d 788, 792 (1959) ("[i]njury is done when the act heralding a possible tort inflicts a damage which is physically objective and reasonable"). *See also Corbett v. Weisband,* 380 Pa.Super. 292, 309, 551 A.2d 1059, 1068 (1988) (citation omitted); *Donnelly, supra.*

Although the discovery rule has historically been used to define an injury for statute of limitations purposes, this court, in *Giffear,* recently discussed the rule in determining whether a negligent act was actionable in light of the prospect of future injury. *See Giffear v. Johns–Manville Corp., et al.,* 429 Pa.Super. 327, 632 A.2d 880 (1993). In *Giffear,* this court, en banc, reiterated the *Ayers, supra,* holding that an injury cannot exist without functional impairment. *Id.* We stated

---

**3.** "[T]hree independent phases of knowledge must be known or knowable to plaintiff before the limitations period commences: (1) knowledge of the *injury;* (2) knowledge of the *operative cause* of the injury; and (3) knowledge of the *causative relationship* between the injury and the operative conduct." *Berardi v. Johns–Manville Corp.,* 334 Pa.Super. 36, 42, 482 A.2d 1067, 1070 (1984) (citation omitted).

that asymptomatic pleural thickening could not be characterized as a compensable injury, as it did not impair a plaintiff's ability to lead a normal life. The court also held that the proper time to bring an action for damages for developing cancer was when the harm finally occurred. Damages could not be based upon the mere possibility of subsequently developing cancer.[4]

In the instant case, although appellee's failure to remove Mr. Vazquez' undescended testis may have been a negligent act it did not constitute an injury. *Ayers, supra.* The "legal and medical realities" of correcting an atrophic testis by lowering of the testis cannot justifiably give rise to a cause of action without evidence that the procedure had resulted in some harm. *See Giffear, supra.* Here, there were no discernible physical symptoms nor any functional impairment at the time the procedure had been preformed. The negligent act, therefore, did not ripen into an injury until appellant contracted cancer. Moreover, as the cancer was not discovered until two years after appellants had been married, appellant, Holly Vazquez, was entitled to bring a claim for loss of consortium. *Berardi, supra.* Accordingly, we reverse the trial court's order and remand for proceedings consistent with this opinion.

Reversed and remanded.

4. Appellants, William and Paula Giffear, had brought suit for physical injuries, and fear of as well as increased risk of cancer, following Mr. Giffear's occupational exposure to asbestos. Mr. Giffear's initial exposure to asbestos had occurred in 1964 and in the following ten years, he was exposed to asbestos two or three times a week. In 1982, he was told that he had pleural thickening and that his asbestos exposure could lead to cancer.