OPINION OF THE COURT
ROTH, Circuit Judge:
Elizabeth Lake is mentally retarded. In 1977, at 16 years of age, she was permanently sterilized. She and her husband, *364 Justin, ask in this appeal whether they can still challenge the sterilization under state and federal law by bringing claims against her father and step-mother who authorized the operation, against the doctors who performed it, and against the hospital where it was performed. Although we agree with the District Court’s decision that the Lakes’ state claims are time-barred by Pennsylvania’s two-year statute of limitations for personal injury suits, we do not agree with its conclusion that the federal civil rights claims are also untimely. Given our earlier decision that the mentally retarded are a protected class for the purposes of 42 U.S.C. § 1985(3), we must determine whether federal tolling doctrine will permit Elizabeth Lake to escape the bar of the statute of limitations on her federal claims. For the reasons we explain below, we will remand this case to the District Court to make this determination in further proceedings consistent with this opinion.
In addition to affirming the dismissal of Elizabeth’s state personal injury claims, we also affirm the District Court’s dismissal of Justin’s state law loss of consortium claim. Finally, we affirm the District Court’s denial of the Lakes’ request to amend their complaint.
I. Facts
Plaintiff-appellant Elizabeth Arnold Lake was born in Ventura, California, in 1961 to Helga Hadvig and Frederick Arnold. Until she was twelve, Elizabeth lived with her mother and her mother’s boyfriend in Minnesota. Her father then invited her to move to Saxton, Pennsylvania, to live with him and his wife, Audrey Arnold. Elizabeth accepted the offer. Elizabeth attended special education classes through the eighth grade, which she completed at age 16 when she left school.
That same year, in June 1977, Elizabeth underwent a tubal ligation at Tyrone Hospital, in Tyrone, Pennsylvania. The Lakes allege that the hospital had a policy allowing the sterilization of the mentally retarded. They contend that on the advice of the family physician, Dr. Chester Isen-berg, Elizabeth was taken to the hospital by her father and step-mother. Despite the fact that Elizabeth was mentally retarded and allegedly illiterate, hospital employees gave her a consent form to sign, authorizing the procedure. Elizabeth signed the form. Dr. Daniel Friday, supervised by Dr. Ralph Crawford, performed the surgery. At no point did any of the defendants seek to have Elizabeth’s interests, as opposed to her parents’ interests, reviewed by a court or other appropriate forum.
The Lakes claim that after the surgery Elizabeth’s father and step-mother removed her from school and had her do housekeeping duties in their home. She remained a member of the Arnold household until she was in her twenties, when she moved into a group home.
In May 1993, Justin and Elizabeth decided to get married. In December 1993, at Justin’s behest, Elizabeth visited a gynecologist to discuss the couple’s desire to start a family. During this visit, the doctor told Elizabeth that she could not bear children because of her 1977 tubal ligation. Allegedly, this visit to the doctor was the first time that Elizabeth learned that her 1977 surgery had left her permanently sterilized. Justin and Elizabeth were married in 1994.
II. Procedural History
The Lakes first filed this civil action on May 31, 1995, in Pennsylvania state court against the following defendants: (1) Elizabeth’s father, Frederick S. Arnold, (2) her stepmother, Audrey L. Arnold, (3) Dr. Daniel M. Friday, (4) Dr. Ralph W. Crawford, and (5) Tyrone Hospital. The action alleged nine counts, including state claims for civil battery, negligence, lack of informed consent, and outrageous conduct, as well as two federal counts, one under 42 U.S.C. § 1983 for violation under color of *365 state law of Elizabeth’s constitutional right to procreate and the other under 42 U.S.C. § 1985(3) for conspiracy to deprive Elizabeth of the right to procreate because she was mentally retarded. Justin also filed a claim of loss of consortium based on Elizabeth’s infertility.
Tyrone Hospital successfully petitioned to remove the case to federal court. Following removal, the plaintiffs filed an amended complaint. All the defendants then filed motions to dismiss pursuant to Fed.R.Civ.Pro. 12(b)(6) for failure to state a claim. Adopting the Magistrate Judge’s Report and Recommendation, the District Court in June 1996 dismissed the two federal civil rights claims, remanded the remaining state claims to the state court, and relinquished jurisdiction.
Elizabeth and Jústin appealed this decision. On May 2, 1997, we reversed the District Court’s decision to dismiss the federal civil rights claims, concluding that (1) the Lakes had alleged sufficient facts to sustain a claim of state action under § 1983[2] and (2) the mentally disabled were a protected class for the purposes of a § 1985(3) conspiracy claim. See Lake v. Arnold, 112 F.3d 682 (3d Cir.1997) (Lake I). We remanded the case to the District Court for further proceedings.
On remand, in response to the amended complaint that reasserted the Lakes’ state and federal claims, the defendants again moved to dismiss, this time contending that the Lakes’ claims were time-barred by the relevant Pennsylvania statute of limitations. The Magistrate Judge once again ruled for the defendants, recommending in his Report and Recommendation that Elizabeth’s claims be dismissed as time-barred and that Justin’s loss of consortium claim be dismissed on substantive grounds. See Lake v. Arnold, No. 95-245J (W.D.Pa. Mar. 10, 1998) (Lake II). Both parties filed timely objections. The Lakes also requested leave to amend their complaint to allege new, but unspecified, facts. The District Court, however, adopted the Magistrate Judge’s recommendations on the statute of limitations and on Justin’s loss of consortium claim and denied the Lakes’ request for leave to amend their complaint. See Lake v. Arnold, No. 95-245J (W.D.Pa. Oct. 30, 1998) (Lake III).[3] It is this order that the Lakes now appeal.
The District Court had subject matter jurisdiction over the Lakes’ federal civil rights claims under 28 U.S.C. § 1331 and supplemental jurisdiction over their related state claims under 28 U.S.C. §" 1367. We have appellate jurisdiction under 28 U.S.C. § 1291.
III. Statute of Limitations
A. Standard of Review
We exercise plenary review of the District Court’s dismissal of the Lakes’ claims on statute of limitations grounds under Fed.R.Civ.P. 12(b)(6). See Algrant v. Evergreen Valley Nurseries Ltd. Partnership, 126 F.3d 178, 181 (3d Cir.1997). This plenary review extends to the District Court’s choice and interpretation of applicable tolling principles and its conclusion that the facts prevented a tolling of the statute of limitations. See Sheet Metal Workers Local 19 v. 2300 Group, Inc., 949 F.2d 1274, 1278 (3d Cir.1991) (citing Vernau v. Vic’s Market, Inc., 896 F.2d 43, 45 (3d Cir.1990)), We assume, for the purposes of our review, that all the facts the Lakes allege in their complaint are true and we give them, as the nonmoving parties below, the benefit of all reasonable inferences one can draw from these facts. We review the District Court’s determina *366 tions of state law de novo. See Salve Regina College v. Russell, 499 U.S. 225, 231, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991); Nelson v. County of Allegheny, 60 F.3d 1010, 1012 (3d Cir.1995).
B. Applicable Statute of Limitations
The District Court adopted the Magistrate Judge’s recommendation that Pennsylvania’s two-year statute of limitations for personal injury lawsuits governed both the Lakes’ state and federal claims. See Lake III. While we agree that Pennsylvania law bars Elizabeth’s state law claims, we do not agree with the District Court’s determination that the federal claims are also time-barred. Although the Pennsylvania statute of limitations is applied to the federal claims, federal tolling doctrine may be applicable to determine whether Elizabeth’s federal claims are timely. See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1387 (3d Cir.1994) (applying federal tolling to limitations period in employment discrimination case); Heck v. Humphrey, 997 F.2d 355, 357-58 (7th Cir.1993). As we discuss below, application of the federal tolling doctrine leads us to conclude that the federal claims may not be barred.
1. State Personal Injury Claims
Elizabeth’s state claims run the gamut of personal injury claims common to medical malpractice suits, alleging (1) civil battery, (2) negligence by Elizabeth’s parents, the doctors, and the hospital, (3) lack of informed consent, and (4) outrageous conduct by her parents, the doctors and the hospital. The District Court, adopting the Magistrate Judge’s recommendation, dismissed them all as time barred by Pennsylvania’s two-year statute of limitations for personal injury suits. See 42 Pa.C.S. § 5524 (West 1999).[4]
The statute of limitations begins to run “from the time the cause of action accrued,” which we have previously interpreted to mean when “the first significant event necessary to make the claim suable” occurs. Ross v. Johns-Manville Corp., 766 F.2d 823, 826 (3d Cir.1985); see generally 42 Pa.C.S. § 5502(a) (West 1999). Thus, Elizabeth’s claim under state law accrued in 1977, when she was sterilized. Although theoretically Elizabeth could have brought her claim in 1977, she contends that as a practical matter she could not have done so because she was 16 years old and mentally retarded. If a claim were to have been brought on her behalf at that time, it would have been brought by her guardians, her father and stepmother, see, e.g., Walker v. Mummert, 394 Pa. 146, 146 A.2d 289, 291 (1958), but it was the guardians who in fact arranged for the sterilization to be performed.
Under the two-year limitations period, Elizabeth’s cause of action expired in 1979, two years after her operation. At the time of Elizabeth’s sterilization, the statute of limitations did not toll for either minority or incompetence. See Walters v. Ditzler, 424 Pa. 445, 227 A.2d 833 (1967). Although the statute was later amended in 1984 to toll foT minors until they reached age 18, that amendment was not retroactive. See Maycock v. Gravely Corp., 352 Pa.Super. 421, 508 A.2d 330 (1986). Even if it were retroactive, however, Elizabeth’s claim would have expired in 1986, making her 1993 claims still untimely. Moreover, the statute of limitations was never amended to include incompetency as grounds for tolling. See 42 Pa.C.S. § 5533 (West 1999).[5] Thus, Elizabeth’s mental *367 retardation is not a basis for preserving her claim under Pennsylvania’s tolling statute.[6]
Pennsylvania common law does, however, allow some “breathing room,” as the Magistrate Judge’s report recognized, in that it recognizes the discovery rule, which tolls the statute of limitations until a plaintiff actually discovers the harm caused by an earlier inflicted but latent injury. See Ayers v. Morgan, 397 Pa. 282, 154 A.2d 788 (1959) (permitting statute of limitations to toll for plaintiffs injuries that later developed from doctor leaving a sponge in his abdomen during surgery).
Nevertheless, the discovery rule does not affect Elizabeth’s state claims because the circumstances under which it can be invoked depend on the nature of the injury rather than any specific characteristics unique to the plaintiff that might otherwise prevent her from recognizing her injury as a cause of action; such unique characteristics include one’s mental state. See, e.g., Dalrymple v. Brown, 549 Pa. 217, 701 A.2d 164 (1997) (denying discovery rule for repressed memory syndrome); Molineux v. Reed, 516 Pa. 398, 532 A.2d 792 (1987) (permitting defendants to assert limitations defense because plaintiff had no evidence of fraudulent concealment). This objective standard prevents Elizabeth from pursuing her claim. Her injury was not latent; therefore, it was not the latent nature of the injury that prevented her from knowing of it. It was her mental retardation and her illiteracy that were the causes for her failing to discover her injury. These characteristics are particular to Elizabeth and do not depend on the type of injury she suffered.
The Lakes now argue, however, that it might be possible for Elizabeth to meet the discovery rule’s reasonableness standard, regardless of her mental retardation and illiteracy. However, the Lakes have alleged in this action that Elizabeth could not understand the nature and scope of the operation. In light of this representation of her inability to appreciate the nature and scope of sterilization surgery as a reasonable person would, we must conclude that Elizabeth could not meet the reasonableness standard. Moreover, because Pennsylvania law requires a plaintiff to exercise a reasonable amount of diligence and vigilance when pursuing a claim, see Redenz v. Rosenberg, 360 Pa.Super. 430, 520 A.2d 883, 886 (1987), Elizabeth’s invocation of the discovery rule is further undermined by the fact that she took no steps to inquire into the nature of her operation until almost two decades after it was performed. In addition, in determining diligence, we would again evaluate the adequacy of the inquiry by the reasonable person standard, not by the standard of the mentally retarded and illiterate.
There is one other circumstance under which a plaintiff can escape the rigors of Pennsylvania’s statute of limitations: when the defendants have intentionally misinformed the plaintiff or concealed information from her so that they are es- *368 topped from invoking the statute of limitations. See Walters v. Ditzler, 424 Pa. 445, 227 A.2d 833 (1967). As we noted above, however, the Lakes do not allege that the defendants intentionally misinformed Elizabeth about her sterilization.
Finally, we are unwilling to accept the Lakes’ argument that we should distinguish existing Pennsylvania precedent that prohibits relying on subjective mental characteristics to invoke the discovery rule on the “permanent” or “biological” nature of Elizabeth’s mental state. As the defendants correctly point out, these are medical rather than legal distinctions. As such, they cannot serve as a basis for reinterpreting what seems to be clearly stated Pennsylvania law: mental incompetency does not toll the personal injury statute of limitations.
In sum, under the Pennsylvania statute of limitations, Elizabeth had two years from the date of her operation to bring her state law personal injury claims. Neither the state statutory tolling provisions, which do not authorize tolling for mental incompetency, nor the state discovery rule, which applies an objective standard for deter mining when an individual should discover a latent injury, afford Elizabeth any relief from the conclusion that her state claims are time-barred by Pennsylvania’s two-year statute of limitations. While this conclusion appears harsh, under principles of federalism and comity between state and federal courts, we must respect the state’s decision to determine the appropriate policies, including the statute of limitations and their related tolling provisions, for its own judicial procedures.
2. Federal Causes of Action Under Sections 1983 and 1985
The Lakes also assert that the defendants’ role in permanently sterilizing Elizabeth gives rise to two federal causes of action for violating her substantive due process right to procreate. See Skinner v. Oklahoma, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942). Because neither § 1983 nor § 1985(3) contains a statute of limitations, we must rely on 42 U.S.C. § 1988, which guides our selection of the appropriate time period to fill the gap. Section 1988 requires us to use the statute of limitations for the state where the federal court sits unless its application would conflict with the Constitution or with federal law.[7]
In determining which state limitations period to use in federal civil rights cases, we look to the general, residual statute of limitations for personal injury actions. See Wilson v. Garcia, 471 U.S. 261, 276-80, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). We must also incorporate any relevant state tolling rules. See Hardin v. Straub, 490 U.S. 536, 543-44, 109 S.Ct. 1998, 104 L.Ed.2d 582 (1989). Thus, for § 1983 and § 1985 actions originating in Pennsylvania, we look to 42 Pa.C.S. §§ 5524 and 5533. See Rose v. Bartle, 871 F.2d 331, 347 (3d Cir.1989) (§ 1983); Rougher v. University of Pittsburgh, 882 F.2d 74, 79 (3d Cir.1989) (§ 1985).
*369 As we recognized in analyzing Elizabeth’s state claims in Part III.B.l, Pennsylvania’s statute of limitations requires all personal injury claims to be brought within a two-year time period and is not tolled for mental incompetence. Because Elizabeth’s sterilization occurred well outside this time frame, any injury she suffered would appear to be barred as untimely. This conclusion, however, is premature. We must first determine whether the state’s tolling provisions themselves conflict with federal law and policy, a question that is not squarely governed by Wilson and Hardin.
Wilson “principally involves the second step in the process [of applying § 1988]: the selection of ‘the most appropriate’ or ‘the most analogous’ state statute of limitations to apply” to § 1988 claims. Wilson, 471 U.S. at 268, 105 S.Ct. 1938. The policies that motivated Wilson, i.e., uniformity, certainty, and the minimization of unnecessary litigation, do not frame our analysis because we are instead concerned with § 1988’s third prong: whether the state limitations statute conflicts with federal law and policy. See Hardin, 490 U.S. at 544 n. 14, 109 S.Ct. 1998 (concluding that Wilson’s policies are “more pertinent to determine which state laws are appropriate than whether application of those laws fosters the policies of § 1983.”). Similarly, although Hardin analyzed whether tolling statutes in general conflicted with § 1983’s policies of compensation and deterrence, it did not hold that courts should ignore whether a state’s particular tolling provision itself conflicts with federal law and policy. We must still, then, decide whether Pennsylvania’s tolling rule satisfies this inquiry. See Board of Regents v. Tomanio, 446 U.S. 478, 486, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980) (requiring determination of whether the New York tolling rule contradicted federal law).
As a policy matter, §§ 1983 and 1985(3) are designed to compensate victims whose federal constitutional or statutory civil rights have been violated and to prevent future abuses of state power. - See Burnett v. Grattan, 468 U.S. 42, 53, 104 S.Ct. 2924, 82 L.Ed.2d 36 (1984). As such, these remedial statutes strive to give victims the opportunity to sue for relief. See id. at 55, 104 S.Ct. 2924. In contrast, state statutes of limitations are not crafted to promote federal remedial policies. See Occidental Life Ins. Co. v. EEOC, 432 U.S. 355, 367, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977) (noting that “[s]tate legislatures do not devise their limitations period with national interests in mind”). This disconnect means that, occasionally, the state statute of limitations must be modified to promote the federal interests at bar.
With this background in mind, let us look carefully at the federal claims that Elizabeth is asserting. We held in Lake I that the mentally retarded, as a class, are entitled to protection under civil rights laws such as § 1985(3) because
[t]he fact that a person bears no responsibility for a handicap, combined with the pervasive discrimination practiced against the mentally retarded and the emerging rejection of this discrimination as incompatible with our ideals of equality convinces us that whatever the outer boundaries of the concept, an animus directed against the mentally retarded includes the elements of a class-based invidiously discriminatory motivation.
112 F.3d at 688 (quoting Novotny v. Great Am. Fed. Sav. and Loan Ass’n, 584 F.2d 1235, 1243 (3d Cir.1978)) (internal quotation marks and brackets omitted). As we also pointed out, involuntary .sterilization is one manifestation of this discrimination against the mentally incompetent. See id. at 688 (citing law review articles). Elizabeth’s federal claims are based on the violation of her constitutional right to procreate. Consequently, her claims are the type that § 1985(3) and § 1983 are designed to protect.
Moreover, under the federal policy that the mentally retarded are a protected class, Elizabeth should not be denied her right to sue solely because of her mental *370 retardation. In Elizabeth’s case, her mental incompetency was the reason her guardians, who ought to have protected her, sought to sterilize her and the reason that the hospital performed the operation. Not allowing any tolling, even in an extraordinary situation such as this one, puts Pennsylvania’s statute of limitations at odds with the objectives that § 1983 and § 1985(3) foster by barring an individual, especially a member of a protected class, who was deprived, as in this case, of her ability to bring a claim through her guardians, from seeking compensation and deterrence.[8] Consequently, the rigidity of the Pennsylvania statute of limitations in regard to mental incompetence, absent a guardian who will protect rather than jeopardize those rights, directly conflicts with Elizabeth’s right as a mentally retarded person to remedy a violation of her constitutionally protected rights. We are thus not obligated to apply that state rule.
When the state tolling rules contradict federal law or policy, in certain limited circumstances we can turn to federal tolling doctrine. See Heck v. Humphrey, 997 F.2d 355, 358 (7th Cir.1993) (recognizing equitable tolling applicable to § 1983 actions where state limitations provision conflicts with federal policy); Boos v. Runyon, 201 F.3d 178, 184 (2d Cir.1999) (recognizing that tolling for a person’s mental disability is “highly case-specific” but declining to apply in instant case); Grant v. McDonnell Douglas Corp., 163 F.3d 1136, 1138 (9th Cir.1998) (permitting federal equitable tolling of a state limitations period for federal claims in exceptional circumstances but finding none present); Nunnally v. MacCausland, 996 F.2d 1, 4-5 (1st Cir.1993) (remanding for factual determination as to whether alleged mental illness justified equitable tolling). Federal courts may toll statutes of limitations for federal laws where the plaintiff “in some extraordinary way has been prevented from asserting his or her rights.” Robinson v. Dalton, 107 F.3d 1018, 1022 (3d Cir.1997) (citing Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1387 (3d Cir.1994)); see also Bowen v. City of New York, 476 U.S. 467, 480, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986) (authorizing equitable tolling where consistent with congressional intent).[9] The doctrine prevents a party from profiting from its own wrong doing. See Oshiver, 38 F.3d at 1388.
Equitable tolling stops the statute of limitations from running when the date on which the claim accrued has already passed. See id. Equitable tolling can be applied to suits brought under the federal civil rights statutes when the state statute of limitations would otherwise frustrate federal policy, see, e.g., Heck, 997 F.2d at 358, because as Wilson recognized, the “adopted” state rule operates “as a federal rule responsive to the need whenever a federal right is impaired.” Wilson, 471 U.S. at 269, 105 S.Ct. 1938. When a plaintiff requests federal equitable tolling but the facts underlying that request are disputed or unclear, a court may remand the case to determine if the facts actually support tolling. See Nunnally, 996 F.2d at 5-7. If Elizabeth’s allegations prove on remand to be true, we conclude that in this situation, where a guardian conspires to deprive a mentally incompetent person of *371 her constitutional and civil rights, equitable tolling might be appropriate. Elizabeth would then be entitled to revive the two-year period that the Pennsylvania law provides for her to bring her claim. See Oshiver, 38 F.3d at 1389.
We are not, in remanding this case to the District Court, holding that a mentally incompetent plaintiff would never be bound by state statute of limitations provisions in federal civil rights actions or, alternatively, that she would be evaluated by a more lenient subjective test. Cf. Robinson, 107 F.3d at 1022-23 (recognizing that a liberal interpretation of equitable tolling exception would swallow the rule). In fact, we have previously held that mental incompetence is not per se a reason to toll the statute of limitations in federal actions. See e.g., Barren by Barren v. United States, 839 F.2d 987 (3d Cir.1988) (rejecting mental incompetence as reason to toll statute of limitations under Federal Tort Claims Act). Where we have permitted equitable tolling for mental disability in the past, the plaintiffs mental incompetence motivated, to some degree, the injury that he sought to remedy. See Eubanks v. Clarke, 434 F.Supp. 1022 (E.D.Pa.1977) (deciding to equitably toll the Pennsylvania statute of limitations for a mentally incompetent plaintiff who was involuntarily committed for entire limitations period).[10]
The unique facts of Elizabeth’s claim distinguish her case from others where a plaintiff has argued for tolling based on mental incapacity. Generally, under a state law where there is no equitable tolling for mental incapacity, the guardian is expected to protect the ward’s interests. Pennsylvania does not permit tolling for mental incompetency for this very reason:
[T]he established procedures for the appointment of guardians afford sufficient protection to individuals who are non compos mentis that their claims will be instituted within the permissible period and thereby diminishes the risk that the rights of incompetents will be impaired by our holding that their disability does not toll the running of the statute of limitations applicable to actions for personal injury.
Walker, 146 A.2d at 291. The unusual aspect of this case, then, is that the guardians themselves, who should have been protecting Elizabeth’s interests, in fact caused the injury to her. Thus, her case differs from the more typical one where a third party injures a mentally incompetent person and the guardian fails to bring the claim in a timely fashion. In the latter case, tolling would be inappropriate because the guardian had failed to exercise diligence. We must reiterate, however, that this is not a case based on state law for breach of fiduciary trust to remedy a ward’s injury caused by a guardian. This is a federal civil rights case seeking a remedy to a member of a protected class who is prevented by state law from tolling the statute of limitations because her guardian failed to protect her precisely because she was mentally retarded.
Because of her mental incapacity, Elizabeth claims to have been unable to appreciate the injury that was done to her when she was sterilized. (We of course will remand to determine if that allegation is justified.) Apparently, she has not been lax in bringing suit because she could not recognize that there was cause to do so. In fact, she brought her suit within two years of learning from her gynecologist that she had been sterilized. Absent her *372 request for a more searching physical examination, she would not necessarily have had a reason to suspect that she had been sterilized until a doctor so informed her because the effects of a sterilization are not always physically observable.[11] Thus, it would appear that she has acted diligently, at least on the facts she alleges. Permitting the tolling provisions of the state statute of limitations to bar her cause of action would frustrate the federal civil rights laws by barring a remedy to a protected person because the guardian, who under state law should have sought to vindicate that person, harmed her instead.
In sum, we are not equitably tolling Pennsylvania’s statute of limitations solely because Elizabeth’s mental incompetence prevented her from recognizing her injury when she was sterilized. Instead, as in Eubanks, we are tolling it due to the failure of the guardian system. The persons, who should have protected Elizabeth because of her retardation, instead harmed her by having her sterilized so that she could not procreate. If her allegations prove true on remand, Elizabeth’s claims should proceed.[12] In this instance, equitable tolling would promote Congress’s intent in enacting §§ 1983 and 1985. It would give Elizabeth the opportunity she was denied when she was sterilized-—adequate representation of her interests—and give her a chance to seek a remedy for her injury. •
We hold, therefore, that the Pennsylvania statute of limitations for personal injury claims could, on these alleged facts, be equitably tolled until the time, perhaps the gynecologist visit in December 1993, when Elizabeth and her husband Justin learned, or should have become aware, that Elizabeth’s sterilization procedure left her permanently unable to bear children.[13] We will remand this case to the District Court to determine whether equitable tolling is appropriate under the standard we set out above.
IV. Loss of Consortium Claim
The Lakes also argue that the lower court decision to dismiss Justin’s consortium claim should be reversed. We have plenary review over the District Court’s dismissal of Justin Lake’s consortium claim for failure to state a claim. See Silverman v. Eastrich Multiple Investor Fund, LP, 51 F.3d 28, 30 (3d Cir.1995).
The Magistrate Judge concluded that Justin’s loss of consortium claims were barred on substantive legal grounds because Elizabeth’s injury occurred before the Lakes were married. See Sprague v. Kaplan, 392 Pa.Super. 257, 572 A.2d 789 (1990) (holding that consortium claims are only valid when a spouse is injured after the couple is married). On appeal, the Lakes argue that their case is distinguishable from Sprague because Elizabeth’s injury is akin to a spouse’s injury that develops over time. Thus, the discovery rule should also preserve Justin’s derivative loss of consortium claim.
*373 The Lakes argue that their claim falls within the scope of Vazquez v. Friedberg, 431 Pa.Super. 523, 637 A.2d 300 (1994), which recognized that when the cause of action underlying a loss of consortium claim is tolled subject to the discovery rule, the statute of limitations for the loss of consortium claim is also tolled. See id. at 301-02. In Vazquez, although the injury that caused her husband’s cancer occurred before their marriage, the court permitted the wife to assert a loss of consortium claim because the cancer that they discovered after their marriage, and not the initial injury, was the basis for her claim. See id. The Lakes assert that, because the harm Elizabeth suffers is her inability to have children, the loss of consortium claim is based on that injury rather than the initial sterilization.
We disagree. Even though we are tolling the statute of limitations for Elizabeth’s federal claims, Sprague still bars Justin’s consortium claim on substantive grounds. Once Elizabeth was sterilized, she was unable to have children. There is no subsequent harm, as in Vazquez, arising from that initial injury. Moreover, even under the more general proposition that the loss of consortium claim, like the underlying federal civil rights claims, should be equitably tolled, the Lakes’ argument also fails. Elizabeth and Justin were both aware of Elizabeth’s sterilization in 1993, before their marriage in 1994. Therefore, the injury was discovered before, not after, their marriage, a scenario under which Sprague precludes suit.
V. Denial of Leave of Amend Complaint
Our final inquiry is whether the District Court should have allowed the Lakes’ motion to amend their complaint a second time following remand in Lake I. We review the District Court’s decision to deny the Lakes’ request to amend for abuse of discretion. See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir.1997) (citing Lorenz v. CSX Corp., 1 F.3d 1406, 1413-14 (3d Cir.1993)).
Under the Federal Rules of Civil Procedure, a plaintiff is entitled to amend her claim once; courts may grant subsequent amendments “when justice so requires.” Fed.R.Civ.P. 15(a). While this Rule also requires that leave to amend should be “freely given,” a district court has the discretion to deny this request if it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party. See Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). While a District Court has substantial leeway in deciding whether to grant leave to amend, when it refuses this type of request without justifying its decision, this action is “not an exercise of its discretion but an abuse of its discretion.” Id.
As the Lakes note, the District Court’s October 1998 order offered no explanation for denying their request, even though the Lakes filed their request for leave to amend on April 1, 1998. At that time, the Lakes alleged that they had additional facts that would enable them to withstand the defendants’ motion to dismiss. As we learned at argument, however, the Lakes did not supply the District Court with a draft amended complaint, even though they had several months between the time that the Magistrate Judge issued his Report and Recommendation (filed March 10, 1998) and when the District Court issued its order (filed October 30, 1998) during which to draft one. Instead, the Lakes chose to wait until the District Court issued its order.
Despite their delay, the Lakes now urge us to reverse the District Court’s decision as an abuse of its discretion because the District Court’s order failed to explain why it denied their request to amend. Not providing a justification for a denial of leave to amend, however, does *374 not automatically constitute an abuse of discretion as long as the court’s rationale is readily apparent from the record on appeal. See 3 James Wm. Moore, et al., Moore’s Federal Practice § 15.14[2] at 15-32 (3d ed.1999), citing Pallottino v. City of Rio Rancho, 31 F.3d 1023, 1027 (10th Cir.1994) (noting that court failed to provide express reason for denial but only harmless error when apparent from record).
Moreover, some District Court local rules in our Circuit require that a plaintiff give a District Court a draft amended complaint so that it can review the proposed changes to determine whether “justice requires” the court to grant plaintiffs request. See Cindrich, et al., 1 Federal Civil Procedure Before Trial — 3d Circuit 8:285 (1996) (discussing Local Rule 12(h) for District Court of New Jersey). Obviously, without this draft complaint, the District Court cannot evaluate the merits of a plaintiffs’ request. Here, as we stated above, the plaintiff failed to give the District Court a draft complaint to review. Thus, the court had nothing upon which to exercise its discretion. Consequently, the District Court’s lack of findings or justification do not make its denial of leave to amend improper, although such a statement would have made our review more straightforward. See Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644, 655 (3d Cir.1998) (upholding District Court’s denial of leave to amend despite absence of specific factual findings justifying denial); Kelly v. Del. River Joint Comm’n, 187 F.2d 93, 95 (3d Cir.1951) (affirming lower court’s summary refusal to permit amendment to a claim given plaintiffs failure to provide court with a proposed amended complaint).
We conclude that the Lakes’ failure to provide a draft amended complaint would be an adequate basis on which the court could deny the plaintiffs request. See Rolo, 155 F.3d at 655; accord Harris v. City of Auburn, 27 F.3d 1284, 1287 (7th Cir.1994) (noting that the failure to provide a proposed amended complaint demonstrates lack of diligence or bad faith). Moreover, we are inclined to give the District Court even broader discretion when, as here, the court has already granted the requesting party an opportunity to amend its complaint. See, e.g., DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 186 n. 3 (9th Cir.1987).
VI. Conclusion
For the foregoing reasons, we will vacate the District Court’s order dismissing Elizabeth’s federal claims and we will remand the case to the District Court for further proceedings consistent with this opinion. We will affirm the dismissal of Elizabeth’s state personal injury claims, as well as Justin’s loss of consortium claim. Finally, we will affirm the District Court’s decision to deny the Lakes’ request to amend their complaint.

. We found that the Lakes' allegations that Tyrone Hospital was a state actor were adequate to withstand a motion to dismiss.

. The Magistrate Judge also dismissed Dr. Crawford's defense that he was not Dr. Friday's supervisor and Audrey Arnold's defense that she owed Elizabeth no legal duty of protection. See Lake III, slip op. at 3-4 nn. 3-4. Neither party, however, appeals these decisions and we do not address them.

. The statutory language reads in pertinent part:
The following actions and proceedings must be commenced within two years: ...
(2) An action to recover damages for injuries to the person or for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another.
42 Pa.C.S. § 5524 (West 1999).

. The statutory language reads:
(a) General rule. — Except as otherwise provided by statute, insanity or imprisonment *367 does not extend the time limited by this subchapter for the commencement of a matter.
(b) Infancy. — If an individual entitled to bring a civil action is an unemancipated minor at the time the cause of action accrues, the period of minority shall not be deemed a portion of the time period within which the action must be commenced. Such person shall have the same time for commencing an action after attaining majority as is allowed to others by the provisions of this subchapter. As used in this subsection the term "minor” shall mean any individual who has not yet attained the age of 18.
42 Pa.C.S. § 5533 (West 1999).

. The Pennsylvania Supreme Court justified its strict construction of the personal injury statute of limitations in regard to the mentally incompetent in its opinion in Walker v. Mummert, 394 Pa. 146, 146 A.2d 289, 291 (1958), in which the court emphasized that the practice of appointing a guardian, who can bring suit on behalf of the incompetent, would mitigate against any harsh consequences from a strict construction of the statute of limitations against the incompetent.

. Title 42 U.S.C. § 1988 provides, in relevant part:
The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of this Title, and of Title “CIVIL RIGHTS,” and of Title "CRIMES,” for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal causes is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause.
(emphasis added).

. In Elizabeth’s case, deterrence is of less concern because Pennsylvania now requires a court proceeding before guardians can consent to their ward’s sterilization. See 20 Pa. C.S.A. § 5221(d)(1). See also In re Terwilliger, 304 Pa.Super. 553, 450 A.2d 1376 (1982) (holding sterilization by guardian’s consent requires court order).

. Equitable tolling is appropriate in three general scenarios: (1) where a defendant ac-lively misleads a plaintiff with respect to her cause of action; (2) where the plaintiff has been prevented from asserting her claim as a result of other extraordinary circumstances; or (3) where the plaintiff asserts her claims in a timely manner but has done so in the wrong forum. See Oshiver, 38 F.3d at 1387. We are concerned in this case with only the second scenario, where extraordinary circumstances prevent a plaintiff from timely filing.

. The Eubanks court concluded that it was unreasonable to expect a mental ward inmate to pursue his claims and thus, denying him his § 1983 action would contradict federal policy by insulating those who had denied his rights. Eubanks, 434 F.Supp. at 1032-33. Similarly, while we recognize that Elizabeth’s situation is not so extreme, it nonetheless presents similar concerns because the absence of a guardian who could advocate Elizabeth’s rights made it practically impossible for her to protect her rights. Thus, failing to equitably toll the statute of limitations for Elizabeth would impermissibly allow the defendants to avoid responsibility for their actions simply through the passage of time.

. Tubal ligations do not necessarily affect a woman’s menstrual cycle or other aspects of her femininity. See L. Elizabeth Bowles, The Disenfranchisement of Fertile Women in Clinical Trials: The Legal Ramifications of and Solutions for Rectifying the Knowledge Gap, 45 Vand. L.Rev. 877, 909 (1992) (discussing consequences of tubal ligation); Estate of C.W., 433 Pa.Super. 167, 640 A.2d 427, 432 (1994) (approving tubal ligation because, among other reasons, it would not affect C.W.'s menstrual cycle or feelings of femininity)-

. The defendants argue that Elizabeth had enough time after she left the custody of her father and stepmother to bring her case. We are not persuaded that, absent a guardian or other representative of her interests, Elizabeth could be expected to advocate her own interests or even evaluate what course of action would be in her best interest. Thus, the fact that she left her parents’ home does not, alone, preclude our application of federal tolling principles.

. Applying the equitable tolling doctrine to Elizabeth’s federal claims, however, does not mean that we are making any decisions on the merits of her case.