NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-2745
_____

JULIE BEBERMAN,
Appellant

v.

SECRETARY UNITED STATES DEPARTMENT OF STATE,
in his Official Capacity
_____

No. 20-1671
_____

JULIE BEBERMAN,
Appellant

v.

UNITED STATES DEPARTMENT OF STATE;
SECRETARY UNITED STATES DEPARTMENT OF STATE
_____

On Appeal from the United States District Court
for the District of the Virgin Islands
(D.C. Civ. Nos. 1-17-cv-00048 & 1-14-cv-00020)
District Judge:  Honorable Anne E. Thompson
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
May 25, 2022
_____

Before:  GREENAWAY, JR., PHIPPS, and FUENTES, *Circuit Judges*.

(Opinion Filed:  June 7, 2022)

—————

OPINION[*]

—————

PHIPPS, *Circuit Judge*.

In this consolidated appeal, a former Foreign Service Officer with the United States Department of State challenges judgments against her in two cases, both related to her tenure denial. We will affirm those judgments for the reasons below.

**BACKGROUND**

In 2011, the State Department appointed Julie Beberman, who was forty-eight at the time, to a five-year term in the Foreign Service. During those five years, Beberman worked at two different overseas locations. From 2011 to 2012, she worked in the visa office at the United States Embassy in Caracas, Venezuela. Later, from 2014 until 2016, Beberman worked at the United States Embassy in Malabo, Equatorial Guinea, initially as a Backup Consular Officer.

During her term of employment, Beberman lodged multiple complaints of age and gender discrimination with the Equal Employment Opportunity ('EEO') Office at the State Department. For instance, she challenged two of her annual evaluations in Caracas as discriminatory, and she disputed her loss of the position of Backup Consular Officer in Malabo as retaliatory for her prior EEO complaints.

—————

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

To continue her employment as a career appointee beyond her term, Beberman had to receive tenure from the Commissioning and Tenure Board within the State Department. *See* 22 U.S.C. § 3946(a) (requiring Foreign Service career candidates to "first serve under a limited appointment as a career candidate for a trial period of service prescribed by the Secretary"); 22 C.F.R. § 11.20(a)(3) (establishing a trial period of no longer than five years). On three occasions she applied for tenure. The Summer 2014 and 2015 Tenure Boards deferred on the tenure decision, but the Winter 2015 Board denied her tenure, and she faced mandatory separation upon expiration of her five-year term.

Beberman administratively challenged the denial of tenure. She applied for and received interim relief from separation. Consistent with State Department policy, the then-Ambassador of Equatorial Guinea issued Beberman a separation order that assigned her to Washington, D.C. during the pendency of her challenge. When transferred to Washington before her termination, Beberman did not receive cost-of-living and other benefits.

Before her denial of tenure, Beberman, who has filed many suits against the State Department,[1] sued the State Department on May 9, 2014. She amended the complaint once as of right, and she moved several times between 2014 and 2017 for leave to amend

---

[1] According to a panel of this Court, Beberman has filed at least twelve federal lawsuits relating to her employment at the State Department. *See Beberman v. Sec'y U.S. Dep't of State*, 2022 WL 683363, at *1 n.1 (3d Cir. Mar. 8, 2022).

her complaint. On September 1, 2017, the District Court, by order, granted some motions to amend, denied others, and allowed her to file a Seventh Amended Complaint.

Beberman responded to that order in two ways. For the counts that she could not amend, she brought those in a new action filed against the State Department on October 16, 2017. And for the permitted amendments, she included those in her Seventh Amended Complaint in the underlying action. Her Seventh Amended Complaint, in total, alleges six counts under the Age Discrimination in Employment Act (the 'ADEA') and one count for emotional distress under the Federal Tort Claims Act (the 'FTCA'). Two of Beberman's ADEA claims allege that the State Department retaliated against her after it denied her tenure: first by transferring her to Washington D.C. while she was on interim relief from separation, and then by not awarding her certain benefits while in Washington, D.C.

Beberman tried twice to amend the Seventh Amended Complaint. On February 14, 2018, she filed a motion to amend the FTCA emotional distress claim by adding allegations recognized in an out-of-circuit case as necessary for such a claim against the State Department. The District Court denied that motion because she could have included those allegations in her Seventh Amendment Complaint. And on July 26, 2019, after the close of discovery and five days before the State Department's summary judgment brief was due, Beberman sought to amend one of her ADEA claims to add facts that she claims to have learned in discovery. The District Court denied that motion as unduly delayed and prejudicial. Beberman paired her second motion for leave to amend

with a motion for reconsideration of the District Court's order dismissing the same ADEA claim, and the District Court also denied that motion.

On the merits, the District Court rejected all of Beberman's claims. For the underlying action filed in 2014, the District Court determined that several of her claims were untimely or failed to state a claim for relief, and after ample opportunity to amend, it dismissed those claims with prejudice. It performed the same analysis and reached the same outcome with respect to the spin-off claims that Beberman brought through her later-filed 2017 action. The two post-tenure ADEA retaliation claims in her 2014 action survived dismissal, and the District Court granted the State Department's summary judgment motion on both counts.

Beberman timely appealed the adverse judgments in both cases, bringing them within this Court's appellate jurisdiction. *See* 28 U.S.C. § 1291. On appeal, she challenges the District Court's dismissal of her 2017 action. She also disputes several of the District Court's rulings in her underlying 2014 action: the denial of her motions to amend the Seventh Amended Complaint, the denial of her motion for reconsideration, and the entry of summary judgment against her post-tenure denial retaliation claims.

## DISCUSSION

### 1. *The Dismissal of Beberman's Duplicative Lawsuit*

In dismissing Beberman's spin-off suit filed in 2017, the District Court evaluated the plausibility of her claims. But on *de novo* review of a district court's dismissal of a complaint, an appellate court "may affirm on any grounds supported by the record."

5

*Hassen v. Gov't of V.I.*, 861 F.3d 108, 114 (3d Cir. 2017) (internal quotation marks and citations omitted). And here, the District Court's ruling, while not incorrect, may be affirmed more succinctly because it was impermissible for Beberman to file a duplicative lawsuit alleging the claims that the District Court did not allow as pleading amendments. *See Walton v. Eaton Corp.*, 563 F.2d 66, 70, 71 (3d Cir. 1977) (en banc) (explaining that a party has "no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant," especially when she tries to do so in an effort to "expand the procedural rights [s]he would have otherwise enjoyed").

### 2. *The Eventual Denial of Beberman's Motions to Amend*

The District Court did not abuse its discretion in rejecting Beberman's requests to file an Eighth Amended Complaint. *See Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000). By rule, leave to amend should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), but that lenient standard has limits, and the rule's liberality wanes for successive requests made further into the litigation. *See, e.g.*, *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001) ("Delay may become undue when a movant has had previous opportunities to amend a complaint.").

Here, the District Court permitted Beberman to amend her complaint for a seventh time. In requesting that amendment, Beberman invoked an out-of-circuit case, *Tarpeh-Doe v. United States*, 904 F.2d 719, 722–23 (D.C. Cir. 1990), that recognized an exception to the FTCA's bar on claims arising in foreign nations, *see* 28 U.S.C. § 2680(k)

6

– a topic that this Circuit has not addressed. The District Court allowed her requested seventh amendment, but afterwards she failed to include any discussion of that case – or the facts necessary to state a claim under it – in her Seventh Amended Complaint. In seeking to amend her complaint for an eighth time, Beberman recycled the argument that she needed to add facts based on *Tarpeh-Doe*. But after affording Beberman the opportunity to account for that out-of-circuit case through the Seventh Amended Complaint, the District Court did not abuse is discretion in denying Beberman another opportunity to do so.

Nor was it an abuse of discretion for the District Court to deny Beberman's second motion to amend her complaint for an eighth time. In that motion, she sought to amend her complaint to cure a dismissed claim by adding facts about the duties of a Backup Consular Officer that were produced in discovery. But by her own allegations in the Seventh Amended Complaint, Beberman had previously served as a full-time Consular Officer, and she had been selected to serve as a Backup Consular Officer. And in her appellate briefing she describes the duties of that office as "self-explanatory," making it particularly unclear why she did not include those allegations in one of the earlier amendments. Reply Br. 20-1671 at 30. In addition, the timing of her motion to amend risked additionally delaying the already-protracted proceeding: Beberman moved to amend after discovery closed for the surviving claims and five days before the State Department's due date for summary judgment. Nothing about these circumstances

suggests that the District Court abused its discretion in denying Beberman's second motion to amend her Seventh Amendment Complaint.

In the same filing as her second motion to amend, Beberman asked the District Court to reconsider its dismissal of the ADEA count that she attempted to amend with facts about the duties of Backup Consular Officers. The District Court denied that motion. Although Beberman now disputes that order, it was not an abuse of discretion. *See Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 673 (3d Cir. 1999). The motion was untimely: by local rule, motions for reconsideration must be filed fourteen days after the District Court's order absent a showing of good cause, and Beberman filed her motion over a year later, without any showing of good cause. *See* D.V.I. LRCi 7.3. Also, the motion for reconsideration re-argued points in the motion to amend, and it is not abuse of discretion to deny such a motion for reconsideration.

### 3.    *Summary Judgment on the ADEA Retaliation Claims*

The ADEA makes it unlawful for an employer to retaliate against an employee for pursuing a claim of age discrimination. *See* 29 U.S.C. § 623(d). Beberman filed several EEO complaints alleging age discrimination. And she asserts that after denying her tenure, the State Department retaliated against her for those EEO complaints in two ways: by transferring her to Washington, D.C. while she was on post-tenure-denial interim relief from separation, and by denying her cost-of-living and other benefits while in Washington, D.C. The State Department moved for summary judgment on those claims, arguing that Beberman's EEO complaints were not the cause of the alleged adverse

8

actions and that it had legitimate, non-retaliatory reasons for its actions. The District Court granted that motion and entered summary judgment for the State Department. On *de novo* review, within the burden-shifting framework for ADEA retaliation claims, that was correct. *See Conboy v. U.S. Small Bus. Admin.*, 992 F.3d 153, 156 n.1 (3d Cir. 2021).

Even if Beberman could show that those employment actions were caused by her protected EEO activity, the State Department had demonstrated legitimate, non-retaliatory reasons for its actions. *See Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015) (explaining that, if the plaintiff establishes a prima facie case of retaliation under the indirect proof framework, then the burden of production shifts to the employer "to present a legitimate, non-retaliatory reason" for its actions). As far as her transfer back to Washington, D.C., State Department policy requires that persons on interim relief from separation be so transferred in all but "rare circumstances":

> After receiving notification that an employee has received interim relief from separation the employee should be returned to Washington on separation orders to work in a domestic assignment in the Department until the resolution of his/her grievance.

*See* SOP D-01.7, Dist. Ct. Ex. 7 (20-1671 JA0163); *see also id.* (allowing for a "rare circumstances" exception). The policy accounts for "the unique nature of interim relief, i.e., that interim relief can evaporate at any time, with no warning," and allows the State Department "to start re-staffing that officer's post responsibilities sooner rather than later." FSGB Case No. 2018-049, at 20 (July 9, 2019), Dist. Ct. Ex. 14. Because Beberman does not present any rare circumstances that would overcome those objectives

9

or would otherwise require her to remain at post in Malabo, Equatorial Guinnea, the State Department had legitimate, non-retaliatory reasons for transferring her to Washington, D.C.[2]

State Department policy at the time of Beberman's transfer also provided that the transfer to Washington on separation orders does not entitle an employee to locality pay or related benefits:

> [T]he time spent in Washington on interim relief is not an assignment; the employee will not be eligible for locality pay, per diem, or for the home service transfer allowance.

*See* SOP D-01.7, Dist. Ct. Ex. 7 (20-1671 JA0163); *see also id.* (providing that employees on interim relief from separation "should be returned to Washington on separation orders"). That policy provides a legitimate, non-retaliatory reason for not awarding Beberman locality pay and the other benefits she sought while on interim relief from separation.

Beberman persists and argues that the State Department's compliance with its policies was mere pretext and that her transfer and denial of benefits were motivated by

---

[2] In addition to an indirect method of proof, Beberman also contends that the Ambassador's statement that Beberman was transferred so she could focus on her 'grievance' constitutes direct evidence of retaliation for filing her EEO complaints. *See* EEO Investigative Affidavit 8 (20-1671 JA0661). But it cannot be genuinely disputed that the Ambassador's reference to a 'grievance' concerns Beberman's denial of tenure and pursuit of interim relief from separation; that statement and the use of that term were not "connected to" her months-prior EEO complaints. *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 269 (3d Cir. 2010). Thus, these statements fall short of the "high hurdle" that they must clear to qualify as direct evidence of retaliation. *Walden v. Ga.-Pac. Corp.*, 126 F.3d 506, 513 (3d Cir. 1997).

retaliatory animus. *See Daniels*, 776 F.3d at 193 (explaining that, if the employer advances a legitimate non-retaliatory reason for taking the challenged action, "the burden shifts back to the plaintiff to demonstrate that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action" (internal citations and quotation marks omitted)). She starts by disputing the legitimacy of the State Department's policy as inconsistent with a statutory written-finding requirement. *See* 22 U.S.C. § 4136(8). But in a separate suit, Beberman raised the same challenge before an administrative tribunal and on appeal before a district court, both of which rejected that contention. *See Beberman v. Sec'y of State*, 2018 WL 4571453, at *2–*4 (D.V.I. Sept. 24, 2018), *aff'd*, *Beberman v. Sec'y U.S. Dep't of State*, 789 F. App'x 354, 355–56 (3d Cir. 2020). Even without addressing whether those determinations constitute issue preclusion,[3] they were correct: a transfer to Washington is not an action covered by the statutory written-finding requirement. *See* 22 U.S.C. § 4136(8) (providing that a written finding is required to "exclude the grievant from official premises or from the performance of specified functions" after the Foreign Services Grievance Board suspends the involuntary termination of the grievant); 22 C.F.R. § 904.4(a); 3 FAM 4453(a).

---

[3] *See Duvall v. Att'y Gen.*, 436 F.3d 382, 391 (3d Cir. 2006); Restatement (Second) of Judgments § 83 cmt. a ("[Issue preclusion] applies when a final adjudicative determination by an administrative tribunal is invoked as the basis of claim or issue preclusion in a subsequent action, whether that subsequent action is another proceeding in the same administrative tribunal or is a proceeding in some other administrative or judicial tribunal.").

In another effort to prove that the State Department's adherence to its general transfer policy was pretextual, Beberman posits that her supervisors in Caracas influenced the Ambassador in Malabo to retaliate against her. That is pure speculation and does not suffice to show pretext. *See Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n.12 (3d Cir. 1990) ("[A]n inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment.").

Beberman also relies on comparator evidence to prove pretext. She contrasts her transfer and denial of benefits with the treatment of another employee who also received interim relief from separation. Although Beberman and that employee were both sworn into service the same day and denied tenure on the same day, that employee was allowed to remain at his post for a time after his denial of tenure, and when he was eventually transferred to Washington, D.C., he received the benefits that Beberman did not.

Even still, that employee was not similarly situated to Beberman for purposes of the remain-at-post decision. He was assigned to a different embassy, had different job duties, and reported to a different supervisor. Because those differing facts are relevant to the transfer decision, he is not a valid comparator to Beberman for the remain-at-post decision. Also, after that employee voluntarily requested reassignment to Washington, D.C. for medical reasons, he was transferred on a permanent-change-of-station order as opposed to a separation order. Because he was transferred through a permanent-change-of-station order, that employee received the benefits that Beberman sought but did not

receive because her transfer was under a separation order. That fact too prevents the employee from being a valid comparator for the denial-of-benefits decision.[4]

\* \* \*

For these reasons, we will affirm the judgments of the District Court.

---

[4] By way of epilogue, after Beberman's transfer through a separation order, the State Department revised its policy so that employees on interim relief from separation would be transferred to Washington under permanent-change-of-station orders, not separation orders. Due to the change of policy, the State Department retroactively awarded those same benefits to Beberman.