690 A.2d 1146

Ernest CLEVELAND, Jr. and Winifred
Cleveland, H/W, Appellants,

v.

JOHNS–MANVILLE CORP., Johns Manville Sales Corp., Manville Corp., Raybestos Manhattan, Inc., GAF Corp., Unarco Industries, Inc., Celotex Corp., H.K. Porter Co., Inc., Southern Textile Corp., Eaglepicher Industries, Inc., Pacor, Inc., Keene Corp., Garlock, Inc., Owens–Illinois Glass Co., Pittsburgh Corning Corp., Amatex Corp., Owens–Corning Fiberglas Corp.,

Celotex Corp., Appellee.

Supreme Court of Pennsylvania.

Argued Oct. 15, 1996.

Decided March 18, 1997.

404

Martin Greitzer, Joseph Greitzer, Jonathan W. Miller, Philadelphia, for Ernest & Winifred Cleveland.

Bruce H. Bikin, Douglas L. Overtoom, Philadelphia, for Celotex Corporation.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

## OPINION OF THE COURT

NEWMAN, Justice.

This appeal concerns a personal injury action filed by appellants Ernest Cleveland, Jr., and Winifred Cleveland, husband and wife, based on Mr. Cleveland's exposure to asbestos products manufactured by several companies, including appellee Celotex Corporation (Celotex). We must decide the following three issues: (1) can a spouse recover damages for loss of consortium where the other spouse's injury occurred prior to marriage; (2) can a spouse recover delay damages on an award for loss of consortium where the other spouse's injury occurred prior to marriage; and (3) should this Court retroactively apply case law precluding claims for damages based on increased risk and fear of developing asbestos-related cancer? We answer each of these questions in the negative.

## FACTS AND PROCEDURAL HISTORY

In 1969, Mr. Cleveland began working as a painter's apprentice at the Philadelphia Naval Shipyard. From 1969 until 1976, Mr. Cleveland's duties included preparing and painting the interiors of ships. Because other shipyard employees inside the ships were constantly removing and installing insulating materials containing asbestos, Mr. Cleveland worked in an environment thick with asbestos dust.

Following a series of chest x-rays during an annual physical examination in 1980, a doctor informed Mr. Cleveland that he had asbestosis.[1] Although Mr. Cleveland was diagnosed with asbestosis, he was not diagnosed with cancer. He does, however, have an increased likelihood of contracting cancer in the future because of his exposure to asbestos. Notes of Testimony, April 26, 1989 at 6.77–6.88; Epstein Videotaped Deposition, April 24, 1989 at 87. On July 19, 1982, Mr. and Mrs. Cleveland filed a complaint against various manufacturers of insulating materials containing asbestos. Mr. Cleveland sought damages for his injuries, including, *inter alia,* increased risk and fear of developing cancer. In addition, Mrs. Cleveland sought damages for the loss of Mr. Cleveland's consortium.

Mr. and Mrs. Cleveland, however, were not married when they filed the complaint. Mr. Cleveland first met the future Mrs. Cleveland in 1968, when she was married to Timothy A. Smith and was known as Winifred Smith. Mrs. Smith began living with Mr. Cleveland in 1971 or 1972 and assumed the

---

1. Asbestosis is a pneumoconiosis caused by the inhalation of asbestos fiber dust. *Asten Hill Mfg. Co. v. Bambrick,* 5 Pa.Cmwlth. 664, 291 A.2d 354 (1972). "Pneumoconiosis is 'a condition characterized by permanent deposition of substantial amounts of particulate matter in the lungs.' " *Potts v. Celotex, Corp.,* 796 S.W.2d 678, 679 n. 2 (Tenn.1990) (quoting Dorland's Illustrated Medical Dictionary 1037 (26th Ed.1985)). Celotex's medical expert, Dr. Paul E. Epstein, M.D., described asbestosis as follows:

 Asbestosis is scar tissue formation in the air sac walls.... And it is scar tissue that forms as a result of exposure to asbestos. And in this circumstance, when that scar tissue is laid down in the air sac, the space that's available for air is decreased. So now we have a thicker air sac wall and less space for air.

 Epstein Videotaped Deposition, November 17, 1988 at 43–44.

name Winifred Cleveland, even though she was still married to Mr. Smith. She divorced Mr. Smith in April 1983, and married Mr. Cleveland in September 1983. Thus, the Clevelands were not married until more than one year *after* they filed their complaint purporting to be husband and wife.[2]

All defendants, except Celotex, settled with the Clevelands before trial. Celotex stipulated to liability and agreed to pay 15 percent of any verdict upheld on appeal. The parties proceeded to trial on the issue of damages only. Following a trial in the Court of Common Pleas of Philadelphia County (trial court) during April and May of 1989, a jury returned a verdict in favor of Mr. Cleveland for $1,500,000.00 and a verdict in favor of Mrs. Cleveland for $140,000.00. In an Order dated January 8, 1990, the trial court denied Celotex's post-trial motions. In a second Order dated January 8, 1990, the trial court granted the Clevelands' motion for delay damages and entered judgments against Celotex and in favor of the Clevelands.[3] Mr. Cleveland received a judgment for $396,067.40 [4] and Mrs. Cleveland received a judgment for $36,966.40.[5]

Celotex separately appealed each of the trial court's Orders to the Superior Court on April 12, 1990.[6] The Superior Court consolidated the appeals pursuant to Pa.R.A.P. 513. On October 26, 1990, the Superior Court dismissed the appeals without prejudice because Celotex had instituted bankruptcy proceedings in federal court. Following the resolution of Celotex's

2. The Clevelands have provided no explanation for misrepresenting their marital status in the complaint.

3. In a third Order dated January 8, 1990, the trial court imposed sanctions against Celotex pursuant to former Philadelphia Rule 170 (now rule 212.2) for Celotex's failure to settle the case. The imposition of sanctions is not at issue in this appeal.

4. Fifteen percent of $1,500,000.00 ($225,000.00) plus $171,067.40 in delay damages calculated on the $225,000.00.

5. Fifteen percent of $140,000.00 ($21,000.00) plus $15,966.40 in delay damages calculated on the $21,000.00.

6. The trial court ordered Celotex to file a statement of matters complained of on appeal pursuant to Pa.R.A.P.1925(b). Although Celotex filed the required statement, the trial court never prepared an Opinion in support of its Orders.

bankruptcy proceedings, the Superior Court granted Celotex's petition for reinstatement of the appeals on December 1, 1993.

The Superior Court reversed Mrs. Cleveland's award of damages for loss of consortium and her award for delay damages on the verdict for loss of consortium. The Superior Court also granted Celotex's request for a new trial limited to damages by retroactively applying case law abolishing a cause of action for risk and fear of cancer.[7] The Clevelands filed a timely Petition for Allowance of Appeal, which we granted on March 12, 1996.

## DISCUSSION

### I. *Loss of Consortium*

Mrs. Cleveland claims she is entitled to compensation for loss of consortium because of Mr. Cleveland's asbestosis. Consortium is defined as the "[c]onjugal fellowship of husband and wife, and the right of each to the company, society, co-operation, affection, and aid of the other in every conjugal relation." Black's Law Dictionary 309 (6th ed. 1990). A claim for loss of consortium arises from the marital relationship and is based on the loss of a spouse's services resulting from an injury. *Sprague v. Kaplan*, 392 Pa.Super. 257, 572 A.2d 789 (1990). Because it arises from the marital relationship, a claim for loss of consortium does not exist if the complaining parties are not married when the injury occurs. *Vazquez v. Friedberg*, 431 Pa.Super. 523, 637 A.2d 300 (1994); *Sprague; see also* 21 Standard Pennsylvania Practice 2d § 116:39 (1995); 18 Pennsylvania Law Encyclopedia § 83 (1988). When the injury involves a hidden or latent disease, such as asbestosis, the injury occurs when the plaintiff discovers, or reasonably should have discovered, the injury. *Vazquez.*

Mr. Cleveland's injury occurred in 1980, when he discovered that he had asbestosis. *Id.* The Clevelands readily admit, however, that they did not marry until 1983. Accordingly,

---

7. The Honorable John P. Hester wrote a dissenting statement, indicating that he would affirm the trial court.

Mrs. Cleveland cannot maintain a cause of action for loss of consortium because she was not married to Mr. Cleveland when his injury occurred. *Vazquez; Sprague.*

## II. *Delay Damages*

It is self-evident that without a valid award of compensatory damages, a litigant has no basis to seek delay damages pursuant to Pa.R.C.P. 238. Because we hold that Mrs. Cleveland cannot recover damages for loss of consortium, the issue of delay damages on her award for loss of consortium is moot.

## III. *Retroactivity*

■ On appeal to the Superior Court, Celotex, then the appellant, claimed that the trial court erred in charging the jury that Mr. Cleveland could recover for increased risk and fear of developing cancer in the future because of his exposure to asbestos. At the time of trial in 1989, increased risk and fear of cancer was compensable pursuant to Pennsylvania law, even where cancer had not yet developed. *Higginbotham v. Fibreboard Corp.*, 428 Pa.Super. 26, 28 n. 4, 630 A.2d 14, 15 n. 4 (1993); *Giovanetti v. Johns–Manville Corp.*, 372 Pa.Super. 431, 437–38, 539 A.2d 871, 874 (1988); *see also Cathcart v. Keene Industrial Insulation*, 324 Pa.Super. 123, 471 A.2d 493 (1984). However, while the Clevelands were awaiting the reinstatement of their appeal to the Superior Court, that court decided *Giffear v. Johns–Manville Corp.*, 429 Pa.Super. 327, 632 A.2d 880 (1993), *aff'd sub nom. Simmons v. Pacor, Inc.*, 543 Pa. 664, 674 A.2d 232 (1996), which held that plaintiffs could no longer pursue claims for increased risk and fear of cancer in asbestos actions where cancer is not present. Celotex argued that the Superior Court should give *Giffear* retroactive effect to invalidate the trial court's charge allowing Mr. Cleveland to recover for increased risk of cancer and fear of cancer.[8] The Superior Court agreed and granted a new trial on damages.

8. This Court has recognized four approaches to applying a decision announcing a new rule of law. *Blackwell v. Commonwealth, State Ethics Comm'n*, 527 Pa. 172, 589 A.2d 1094 (1991). Mr. Justice

While the Clevelands' appeal to this Court was pending, we affirmed *Giffear* in a consolidated case named *Simmons v. Pacor, Inc.,* 543 Pa. 664, 674 A.2d 232 (1996). *Simmons* originated in the Court of Common Pleas of Philadelphia County. James Simmons and Theodore Murray and their wives sued various manufacturers of asbestos products. The Superior Court consolidated the appeals from the Court of Common Pleas and entered a judgment under the name *Murray v. Philadelphia Asbestos Corp.,* 433 Pa.Super. 206, 640 A.2d 446 (1994). We consolidated the appeal from the Superior Court's judgment in *Murray* with the appeal from the judgment in *Giffear* and issued an Opinion under the name *Simmons.*

█ In *Simmons,* a case of first impression for our Court, we addressed the issue of whether increased risk of cancer and fear of cancer were compensable in an asbestos action where cancer has not yet developed. We held that a plaintiff asserting a non-cancer, asbestos-related claim could not recover for any part of the damages relating to cancer.[9] *Simmons,* 543 Pa. at 678, 674 A.2d at 239. This holding abolishes claims for increased risk and fear of cancer where cancer is not

Zappala cogently explained these four approaches in his Concurring Opinion in *Blackwell* as follows:

> The first approach, in which a new rule is not even applied to the parties to the case in which the rule is announced, may be described as giving the new rule "purely prospective effect". The second approach, in which the new rule is applied to the parties to the case in which the rule is announced and litigation commenced thereafter, is best described, I believe, as giving the new rule "prospective effect".... The third approach, in which the new rule is applied to the case in which it is announced and all other cases then pending on direct review where the issue is raised, may be said to give the new rule "retroactive effect".... The fourth approach, in which the new rule is applied even where the issue has been finally decided at the time of the decision announcing the new rule but later is asserted in collateral proceedings, may be described as giving the new rule "fully retroactive effect".

*Id.* at 190–91, 589 A.2d at 1103.

9. We also held that asymptomatic pleural thickening caused by occupational exposure to asbestos does not support a cause of action for compensatory damages, with the exception that the cost of medical surveillance of the condition is recoverable. *Simmons,* 543 Pa. at 678–79, 674 A.2d at 239.

present, thus eliminating the recovery of damages based on a speculative future event, the possible occurrence of cancer. *Id.* at 676–77, 674 A.2d at 238.[10]

 Although we applied our holding to the parties before us in *Simmons,* we did not address whether our holding should be given retroactive effect. Celotex argues for a retroactive application of *Simmons* here to invalidate the trial court's charge on increased risk and fear of cancer. The Clevelands contend that Celotex waived its challenge to the trial court's charge because it failed to object to the charge at trial. We disagree. In most circumstances, the failure to raise a claim before the trial court results in the waiver of that claim, and issues presented for the first time on appeal will not be considered. *Dollar Bank v. Swartz,* 540 Pa. 369, 657 A.2d 1242 (1995). The waiver rule promotes the orderly administration of justice by requiring the parties to give the trial court an opportunity to correct the alleged error, reducing the need for appellate review. *Tagnani v. Lew,* 493 Pa. 371, 426 A.2d 595 (1981). However, where a fundamental change in the law occurs after the lower court enters its order, but before the appellate court rules, the failure to raise the issue in the lower court will not preclude appellate review of that issue. *Kuchinic v. McCrory,* 422 Pa. 620, 222 A.2d 897 (1966).

The rationale for this exception to the waiver rule was explained in *Kuchinic* as follows:

> The effective administration of justice ordinarily requires that a litigant who fails to raise at trial an available objection waives it on appeal. This Court is reluctant to permit a party to allege error in the jury charge for the first time on appeal, because it would be manifestly unfair to permit a party to take his chances on a verdict, and then complain if

10. *Simmons* eliminated all claims for increased risk of cancer. *Id.* at 678, 674 A.2d at 239. It did not, however, eliminate all claims for fear of cancer. If cancer later develops, a plaintiff can bring a second action to recover for the cancer and all of the past, present and future emotional distress or mental anguish associated with the cancer, including fear of contracting cancer. *Id.* at 678 n. 10, 674 A.2d at 239 n. 10.

he loses, when an earlier objection would have afforded the trial court an opportunity to correct the error.... The present case, of course, is one where an earlier objection would have been to no avail, because the charge correctly stated prevailing law. Furthermore, the rule espoused by appellee would compel counsel to urge upon the trial court every conceivable theory, on the mere chance that, before his case is finally concluded, one such theory might become the law.... Indeed this requirement would tend to delay justice, for the court below would still have to consider and rule on each theory.

*Id.* at 626–27, 222 A.2d at 901 (citations omitted). Additionally, we have stated that "[i]t would be manifestly unfair to hold [a defendant] to a waiver when this waiver is alleged to have occurred at a time when neither the defendant nor his attorney had any way of knowing there existed a right to be waived." *Commonwealth v. Cheeks,* 429 Pa. 89, 95, 239 A.2d 793, 796 (1968); *see also Geonnotti v. Commonwealth, Dept. of Transp.,* 138 Pa.Cmwlth. 652, 588 A.2d 1343 (1991); *Tice v. Nationwide Life Ins. Co.,* 284 Pa.Super. 220, 425 A.2d 782 (1981).

In this case, Celotex did not object to the trial court's charge on recovery for increased risk and fear of cancer because, as discussed in *Higginbotham* and *Giovanetti,* the charge was proper under the prevailing law. Had Celotex objected, the trial court would have been required to overrule the objection and Celotex's only redress would have been to raise the issue on appeal, as it now seeks to do. Thus, neither the parties nor the courts would have been better able to address the issue if Celotex had objected to the jury charge at trial. We hold that, under these circumstances, a finding that Celotex waived its challenge for failing to make a fruitless objection would not further the orderly administration of justice. *Kuchinic.*

▮ We decline to hold, however, that *Simmons* should apply retroactively. The United States Constitution and the Pennsylvania Constitution neither mandate nor preclude a retroactive application of a new decision. *Blackwell v. Com-*

*monwealth, State Ethics Comm'n,* 527 Pa. 172, 589 A.2d 1094 (1991). Normally, we apply a new decision to cases pending on appeal at the time of the decision. *Id.* at 182, 589 A.2d at 1099 ("The general rule followed in Pennsylvania is that we apply the law in effect at the time of the appellate decision."); *McHugh v. Litvin, Blumberg, Matusow & Young,* 525 Pa. 1, 8, 574 A.2d 1040, 1043 (1990) ("[A]t common law an overruling decision was normally held to be retroactive."); *Commonwealth v. Gray,* 509 Pa. 476, 486, 503 A.2d 921, 926 (1985) ("[T]he general rule is that all decisions are to be applied retroactively to cases on direct appeal."); *August v. Stasak,* 492 Pa. 550, 554, 424 A.2d 1328, 1330 (1981) ("At common law, an overruling decision is normally retroactive."). However, a sweeping rule of retroactive application is not justified. *Blackwell; August.* Retroactive application is a matter of judicial discretion and must be exercised on a case by case basis. *August* (citing *Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965)).

When faced with the issue of retroactivity, the threshold question is whether the decision announces a new principle of law. *Schreiber v. Republic Intermodal Corp.,* 473 Pa. 614, 375 A.2d 1285 (1977) (citing *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971)); *see also Blackwell.* If it does, then we can choose to give the new rule prospective effect only. *Id.* Our decision in *Simmons* represents a major landmark in asbestos litigation because this Court announced a new rule of law that definitively eliminated claims for increased risk and fear of cancer where cancer is not present. Although the Superior Court dealt with various aspects of this issue in *Manzi v. H.K. Porter Co.,* 402 Pa.Super. 595, 587 A.2d 778 (1991), *Marinari v. Asbestos Corporation, Ltd.,* 417 Pa.Super. 440, 612 A.2d 1021 (1992), and *Giffear,* it was not until our decision in *Simmons* that this matter was finally put to rest in Pennsylvania. Thus, *Simmons* meets the threshold requirement for prospective only application.

Once the threshold is met, we then consider the following three factors to decide if the new rule should be applied retroactively or prospectively: (1) the purpose to be served by the new rule; (2) the extent of the reliance on the old rule; and (3) the effect on the administration of justice by the retroactive application of the new rule. *Blackwell; Desist v. United States,* 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969) (citing *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967)).

The purpose of the rule announced in *Simmons* was to promote fairness in the adjudicative process by eliminating inequitable awards for speculative future damages. This is a significant purpose, and therefore, the first factor supports a retroactive application. The second and third factors, however, strongly favor a prospective only application of *Simmons.* There has been considerable reliance on the old rule. Countless trial courts charged juries in accordance with the law as it existed before *Simmons.* Additionally, our courts have labored under a backlog of asbestos cases for many years. *Scola v. AC & S, Inc.,* 540 Pa. 353, 657 A.2d 1234 (1995). Requiring new trials in each of the cases on appeal handled pursuant to the pre-*Simmons* rule would only exacerbate this congestion. *See DiDio v. Philadelphia Asbestos Corp.,* 434 Pa.Super. 191, 642 A.2d 1088 (1994) (Johnson, J., dissenting). Furthermore, we are unwilling to force sick and aging plaintiffs, who waited many years for their awards, back into court to re-litigate their claims. Memories have faded and documents have undoubtedly been lost during the intervening years.

We are cognizant of the burden on asbestos manufacturers who were required to pay judgments based on increased risk and fear of cancer. We believe, however, that renewed litigation would impose additional costs on these manufacturers and further impair the efficient administration of justice. Accordingly, we hold that *Simmons* is to be given only prospective effect. To the extent that the Superior Court has applied our decision in *Simmons* or its own decisions in *Murray* and *Giffear* retroactively in other cases, those cases are overruled.

That part of the Superior Court's Order reversing Mrs. Clevelands' judgments for loss of consortium and delay damages is affirmed. That part of the Superior Court's Order requiring a new trial limited to damages based on a retroactive application of *Giffear* is reversed.