## Alverio v. Robinson

C.P. of Philadelphia County, April Term 1998, no. 3298.

*Richard M. Weiner* and *Jerry A. Lindheim,* for plaintiff.

*Pamela A. Carlos,* for defendant.

BRINKLEY, *J.,* May 31, 2001—Rosa Alverio sued Robert Robinson and Enrico Farina for injuries she sustained in a motor vehicle accident. The jury found in favor of plaintiff and against defendant Enrico Farina in the amount of $4,459.95. Jerry A. Lindheim, Esquire, on behalf of plaintiff has filed an appeal of this court's judgment on the jury's verdict, entered on October 25, 1999.

## I. PROCEDURAL HISTORY

Plaintiff Rosa Alverio filed a complaint against defendants Enrico Farina and Robert Robinson in April of 1998. The complaint claimed that Alverio suffered injuries as the result of a motor vehicle accident caused by the defendants' negligence. Since the amount in controversy was $50,000 or less, the parties went to compulsory arbitration on January 7, 1999. Alverio did not proceed with her case against defendant Robert Robinson. The board of arbitrators found against Farina and awarded Alverio $50,000. On January 22, 1999, Farina appealed this award to the court of common pleas for a trial de

novo. Before trial the parties stipulated that Farina was negligent and that Alverio's unpaid medical bills totaled $4,459.95. From October 21 through 25, 1999, the above-captioned matter was tried before this court sitting with a jury. The jury found in favor of Alverio and awarded her $4,459.95. This court entered judgment on the jury's verdict. Alverio filed a post-trial motion for a new trial which this court denied after receiving and reviewing the briefs of both parties. Alverio filed notice of appeal to the Pennsylvania Superior Court on October 24, 2000. The appeal was quashed by the Superior Court on January 29, 2001, and reinstated after reconsideration on February 26, 2001. Neither notes of testimony nor a statement of matters complained of on appeal were received by this court.

## II. FACTUAL HISTORY

On January 27, 1997, Alverio was riding as a passenger in the front seat of a vehicle being driven by Basilia Vargas on Rising Sun Boulevard in Philadelphia. Alverio claimed she was injured when the car in which she was riding was struck from behind by a vehicle driven by defendant Robert Robinson. Robinson's vehicle was hit in the rear by Farina's car. After the accident, police came to the scene and took statements. Then Basilia Vargas drove Alverio home in the vehicle which was involved in the collision.

After the collision, Alverio felt pain in her neck, shoulder, lower back, head and brain. She went home, took some Motrin and laid down. Four days later she went to Champlost Medical Center, which was recommended to her by a friend at the scene of the accident. Alverio began physical therapy at Champlost with hot baths, cold

towels, water machines and electrical simulation. Her family physician at the time of the accident was Dr. Pagalliluan. Alverio continued the physical therapy for six or seven months. She stated her neck and back did not feel better after the physical therapy. While she was in physical therapy, her left arm actually developed pain and so did her hands, bones and brain. Alverio also treated with an orthopedic surgeon, Dr. Evan O'Brien, March through December of 1997. Within this treatment period, Alverio underwent a cervical CT scan, an MRI and EMG testing. Dr. Jennifer Chu, who performed the EMG, reported indications of nerve damage from C3 through C7 bilaterally. Alverio also saw another orthopedist, Dr. Loray and a doctor for headaches, Dr. Manon Espaillat. Dr. Loray performed injections into Alverio's neck in February of 1999 which made her neck, shoulder and left arm feel better.

At the time of the accident in question, Alverio was not working. She testified she had not worked since 1995. Alverio stopped working because of a nervous disorder. Before the nerve problem arose, Alverio operated an industrial machine making clothing for children. Alverio claimed her injuries prevented her from lifting heavy objects and dressing herself. She also could not bathe herself, could not sleep well and could not lift her arm beyond a certain level.

Alverio was examined by a doctor chosen by the defense, Dr. Richard Bennett, whose deposition testimony was offered during trial via videotape. During her examination by Dr. Bennett, Alverio complained of pain along her left arm and in her left ankle, as well as sensory changes on her left side. Dr. Bennett found no objective evidence of injury or loss of sensation. Dr. Bennett

also reviewed the records from Alverio's previous medical providers. He disagreed in particular with Dr. Chu's diagnosis, which was the only objective medical evidence presented. Dr. Bennett would not state that Alverio was injured as a result of the January 27, 1997 accident because he did not examine her at that time. Dr. Bennett opined that if he had, he may have found soft tissue injuries, sprains and/or strains which would long have been resolved.

Farina also presented stipulated testimony from Richard King. King was an investigator for Egis International Inc., who was hired by Farina to conduct surveillance of Alverio. King observed Alverio February 11, 1999, and May 7 and 25-27, 1999. The jury was shown footage from the surveillance tapes made by Egis International Inc. The video showed Alverio lifting herself into a minivan with her left hand, driving the van and working at the deli counter of A & S Grocery making sandwiches, bagging groceries and serving customers.

### III. ISSUE

*Whether the Trial Court Erred in Refusing To Grant a New Trial Because the Damages Awarded Alverio Equaled the Stipulated Amount of Her Unpaid Medical Bills*

### IV. DISCUSSION

### A. The Trial Court Has Discretion Whether To Grant a New Trial

It is settled that the grant or denial of a new trial rests in the discretion of the trial court. *Kiser v. Schulte,* 538

Pa. 219, 226, 648 A.2d 1, 4 (1994). "Trial by jury is among the unique and fundamental institutions of our democratic government." *Colosimo v. Pennsylvania Electric Co.,* 337 Pa. Super. 363, 369, 486 A.2d 1378, 1381 (1984) (citing *Mix v. North America Co.,* 209 Pa. 636, 59 A. 272 (1904)). "Therefore, it is imperative that [the courts] promote public confidence in [the] judicial system by vigilantly protecting the integrity of [the] jury system." *Colosimo,* 337 Pa. Super. at 369, 486 A.2d at 1381. A jury trial presumes that the jury will serve its specific purpose in a "controlled environment" influenced only as permitted by the trial judge. *Hobson v. Wilson,* 737 F.2d 1 (D.C. Cir. 1984).

A jury is free to believe all, some or none of the testimony presented by witnesses. *Neison v. Hines,* 539 Pa. 516, 520, 653 A.2d 634, 637 (1995). The jury is entitled to reject any and all evidence up to a point at which the verdict would be "so disproportionate to uncontested evidence as to defy common sense and logic." *Neison,* 539 Pa. at 521, 653 A.2d at 637. A trial court may only grant a new trial when the jury's verdict is so contrary to the evidence that it "shocks one's sense of justice." *Kiser,* 538 Pa. at 226, 648 A.2d at 4. The review of a trial court's grant or denial of a new trial is limited to whether there was an abuse of discretion or error of law. *Neison,* 539 Pa. at 520, 653 A.2d at 636.

In this case, the verdict is not so contrary to the evidence offered as to shock anyone's conscience or sense of justice. The only factual issue to be determined was whether Alverio suffered compensible injury as a result of the collision with Farina, and what damages she incurred in connection with any injury. The parties offered

conflicting expert and lay testimony regarding the existence of injuries and resultant damages. The jury obviously apparently chose to believe portions of each parties' evidence. The amount awarded was determined by the jury to be fair in light of the evidence. The jury decided that while Alverio did incur medical costs, she may not have suffered compensable injury beyond that amount, especially considering the video containing surveillance of Alverio's activities which contradicted her testimony. It is well within the jury's province to decide such matters, thus this court was correct in entering judgment on the jury's verdict. Any other action would have improperly usurped the jury's function as fact-finder.

### B. The Trial Court Correctly Denied Plaintiff's Request for a New Trial Because the Medical Evidence Was Disputed

In *Neison, supra,* the injuries to the plaintiff were objectively acknowledged by both parties, liability was stipulated, but no damages at all, *i.e.,* zero damages were awarded to the plaintiff. *Neison,* 539 Pa. at 519, 653 A.2d at 636. The Supreme Court of Pennsylvania held that the trial court was correct in granting a new trial in this situation, because the verdict was contrary to the instructions of the court and/or contrary to the evidence. The court specifically noted that the defense in that case was not that the plaintiff had suffered no injuries, nor any pain and suffering, but that the injuries had not lasted long in duration. *Neison,* 539 Pa. at 520, 653 A.2d at 636. The defendant's own expert testified that the plaintiff showed a healed sprain of the neck, scapular and shoulder blade. *Neison,* 539 Pa. at 522, 653 A.2d at 637.

Thus, the evidence regarding the existence of the plaintiff's injuries was uncontroverted. *Neison,* 539 Pa. at 521, 653 A.2d at 637. In light of this uncontroverted evidence, it was plain that the trial court was correct in ordering a new trial. *Neison,* 539 Pa. at 522, 653 A.2d at 638.

However, in *Livelsberger v. Kreider,* 743 A.2d 494 (Pa. Super. 1999), the Superior Court reached a different result, and held that "[T]he plaintiff is entitled to a new trial when the jury fails to award damages and there is *uncontroverted evidence* that the plaintiff suffered injuries as a result of defendant's negligence." *Id.,* 743 A.2d at 495. (emphasis added) In *Livelsberger,* the plaintiff attempted to analogize its case to that of *Neison* when the *Livelsberger* jury awarded the plaintiffs no damages. *Id.* at 495. However, the Superior Court distinguished this case because the injuries in *Livelsberger* and the causation thereof were disputed. Kreider presented expert testimony that questioned the cause of Mrs. Livelsberger's injuries. *Id.* at 495. Another expert acknowledged that Mrs. Livelsberger may have sustained a cervical sprain but nothing else. *Id.* at 496. In addition, the severity of the accident was called into question by photographs of the vehicles presented by the defense. *Id.* at 495. Even though the plaintiff was transported immediately to a hospital and treated subsequently with her family physician, the denial of a new trial was upheld on appeal because the injuries were controverted and a question of fact was properly decided by the jury. *Id.*

In support of her motion for a new trial, in this case, Alverio cited numerous cases which this court finds in-

applicable. All of the cases cited rest on the presumption that the injuries suffered by Alverio were uncontroverted. However, at no point did the defense concede that Alverio had offered any objective proof of any injury. Even Alverio's own expert, Dr. O'Brien, admitted that his diagnosis was based on the subjective complaints of the plaintiff. In one of the cases cited by plaintiff, *Mano v. Madden,* 738 A.2d 493, 495 (Pa. Super. 1999), the plaintiff was also rear-ended by the defendant. Mr. Mano claimed to have suffered injuries to his neck and back. *Id.* Liability was found as a matter of law by the court. When a verdict was rendered in favor of the defendant, the trial court granted a new trial. *Id.* During trial, defendant's expert conceded that Mr. Mano had suffered an injury directly resulting from the accident. *Id.* at 496. The court noted that "it is evident that both medical experts believed Mr. Mano suffered some strain to his neck and back as a result of the accident, differing only as to the extent and duration of his injury." *Id.* at 497.

However, the injuries in this case were disputed by the parties. Alverio's experts agreed that Alverio was injured, but their diagnoses were vague. On the other hand, Dr. Bennett, the defense medical expert, did not concede that Alverio was injured, and expressly disagreed with the analysis of the only objective medical report offered by Alverio to prove her injuries. Dr. Bennett found no objective signs of injury. Moreover, the photographs offered by the defense undermined the severity of the impact as described by Alverio. The pictures showed minimal damage to the vehicles involved in the collision. In addition, the surveillance video offered by Farina was extremely damaging to Alverio's credibility in

that it portrayed her doing many of the activities she claimed to be prevented from engaging in because of her injuries. The entire defense of Farina was based upon evidence offered to prove that Alverio was not injured as she claimed. There was no concession of injury, however slight. The medical evidence in this case, therefore, was controverted or disputed and the cases upon which Alverio relied in her post-trial motions (which are presumed to be the basis of this appeal) are not applicable to this situation.

## C. Even If the Injuries Were Not Disputed, Alverio's Reliance on a Case Decided Subsequent to Alverio That Verdict Is Erroneous

In her brief support of her post-trial motion for a new trial, Alverio relied on *Burnhauser v. Bumberger,* 745 A.2d 1256 (Pa. Super. 2000). The case is cited in support of Alverio's proposition that a verdict for the exact amount of unpaid medical expenses demands a new trial. While it is true that a new trial was awarded on that basis, the evidence from the medical experts was, again, uncontroverted. Both parties' experts agreed that Ms. Burnhauser had suffered injuries as a result of the accident between the parties. *Id.* at 1258. The only disputed point was the nature and extent of said injuries. *Id.* Therefore, in accordance with the aforementioned line of cases, including *Mano v. Madden,* a new trial was ordered because the evidence proving the plaintiff was injured was uncontroverted.

Obviously, *Burnhauser* is not applicable to the case at bar since it was decided January 2000, over two months after Alverio's jury verdict of October, 1999. Moreover,

Pennsylvania courts have long disfavored the retroactive application of newly promulgated rules of law. Once a new rule is determined to have been created, the Supreme Court of Pennsylvania uses a three-factor test to decide if the rule should be applied retroactively. *Cleveland v. Johns-Manville Corp.*, 547 Pa. 402, 414, 690 A.2d 1146, 1152 (1997). The first factor is the purpose to be served by the new rule. If the purpose is significant to promoting fairness and justice, this factor will support retroactive application. *Id.* The second factor is the extent of reliance on the old rule. *Id.* If there is considerable reliance on the old rule by those effected, retroactivity is not favored. *Id.* The third factor to be considered is the effect on the administration of justice by the retroactive application of the new rule. *Id.* If the new rule will overly burden the justice system or the effected parties, it will not be applied retroactively. *Id.*

In this case, even if applicable, the rule could not have been applied by this court and should not be applied retroactively. In this situation, the purpose of the rule is to ensure that jury verdicts are not below an unconscionable amount once liability has been assessed. The amount awarded Alverio was deemed fair by the jury in light of the conflicting testimony and evidence. The reliance on a prior rule is significant because there would be no reason for the issue to be fully litigated if the defendants were already aware of the liability and damages that ultimately would be assessed to them. The administration of justice surely would be affected if this case was applied retroactively to all pending actions in which the injuries are not controverted. Courts will deviate from retroactivity if the application will "lead to an inequi-

table result which imposes an injustice." *Kituskie v. Corbman,* 552 Pa. 275, 283 n.5, 714 A.2d 1027, 1031 n.5 (1998) (citing *Blackwell v. State Ethics Commission,* 527 Pa. 172, 184, 589 A.2d 1094, 1100 (1991)). In this case, applying *Burnhauser* to the instant matter would lead to an inequitable result because the injuries are controverted and no purpose would be served by such application.

## IV. CONCLUSION

Based upon the foregoing, this court properly denied Alverio's motion for a new trial as the verdict of the jury was based on credibility determinations within the domain of the jury as the fact-finder. Therefore, Alverio's motion was properly denied and her appeal should be dismissed.