**[J-20-2019] [MO: Mundy, J.]**

**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**


COMMONWEALTH OF PENNSYLVANIA, : No. 36 MAP 2018
:
             Appellee : Appeal from the Order of the Superior
: Court at No. 1787 MDA 2016 dated
: January 19, 2018, Vacating the Order
             v. : of the Court of Common Pleas of
: Lycoming County, Criminal Division,
: at No. CP-41-CR-1083-2014 dated
KIRK JACOB HAYS, : October 31, 2016 and remanding
:
           Appellant : SUBMITTED: February 6, 2019


## DISSENTING OPINION


**JUSTICE DONOHUE**                        **DECIDED: October 31, 2019**

I disagree with the learned Majority that Hays' failure to challenge our prior decision in *Commonwealth v. Cabeza*, 469 A.2d 146 (Pa. 1983), requires a finding that he is not entitled to benefit from the United States Supreme Court's decision in *Birchfield v. North Dakota*, 136 S. Ct. 2160 (2016). Based on my research and the case law relied upon by Hays, he was under no obligation to preserve his objection to the warrantless blood draw. I therefore would conclude that *Birchfield* applies retroactively to cases pending on direct appeal at the time of the decision regardless of preservation.

As the United States Supreme Court has recognized, judicial decisions have had retroactive application "for near a thousand years." *Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 94 (1993) (quoting *Kuhn v. Fairmont Coal Co.*, 215 U.S. 349, 372 (1910) (Holmes, J., dissenting)). In *Griffith v. Kentucky*, 479 U.S. 314 (1987), the Court made clear that this general rule of retroactivity was without limits, holding that "a new rule for

the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final[.]" *Id.* at 328. *See also Davis v. United States*, 564 U.S. 229, 243 (2011) (*Griffith*'s rule of retroactivity applies to all cases on direct review "with no exception").

In some cases, the United States Supreme Court left it to the states to determine whether the failure to preserve an issue in a lower court served as a barrier to applying a new federal constitutional rule on direct appeal. *See, e.g., United States v. Booker*, 543 U.S. 220, 268 (2005) (new rule announced in *Blakely v. Washington*, 542 U.S. 296 (2004), can be waived for failure to raise the claim below); *Shea v. Louisiana*, 470 U.S. 51, 59 n.4 (1985) (same, as to the new rule announced in *Edwards v. Arizona*, 451 U.S. 477 (1981)). In *O'Connor v. Ohio*, 385 U.S. 92 (1966) (per curiam), however, the Court reversed the Ohio Supreme Court's finding that the appellant was not entitled to benefit from the new rule announced in *Griffin v. California*, 380 U.S. 609 (1965),[1] based on his failure to raise the claim in the courts below. The *O'Connor* Court observed that both the State and the defendant had relied on the former decisions that *Griffin* overruled, and that "[d]efendants can be no more charged with anticipating the *Griffin* decision than can the States." *O'Connor*, 385 U.S. at 93. Therefore, the Court held that the appellant's "failure to object to a practice which Ohio had long allowed cannot strip him of his right to attack the practice following its invalidation by this Court." *Id.*

In *Cabeza*, this Court, in reliance on our prior decision of *August v. Stasak*, 424 A.2d 1328 (Pa. 1981), held that "where an appellate decision overrules prior law and

---

[1] The Court in *Griffin* held that commentary on a defendant's decision not to testify violated the Fifth Amendment. *Griffin*, 380 U.S. at 614.

announces a new principle, unless the decision specifically declares the ruling to be prospective only, the new rule is to be applied retroactively to cases where the issue in question is properly preserved at all stages of adjudication up to and including any direct appeal." *Cabeza*, 469 A.2d at 148. But this Court has also held that the failure to preserve an issue in a lower court does not result in waiver of a new rule of law for cases pending on direct appeal at the time of the announcement of the new rule. In *Kuchinic v. McCrory*, 222 A.2d 897 (Pa. 1966), this Court held that the new rule announced in *Griffith v. United Airlines*, 203 A.2d 796 (Pa. 1964) (abandoning the rule that the place of the tort was controlling for choice of law cases), applied even though the issue had not been raised in the courts below. *Kuchinic*, 222 A.2d at 901. The Court thoroughly explained the reason for its conclusion:

> The effective administration of justice ordinarily requires that a litigant who fails to raise at trial an available objection waives it on appeal. This Court is reluctant to permit a party to allege error in the jury charge for the first time on appeal, because it would be manifestly unfair to permit a party to take his chances on a verdict, and then complain if he loses, when an earlier objection would have afforded the trial court an opportunity to correct the error. The present case, of course, is one where an earlier objection would have been to no avail, because the charge correctly stated prevailing law. Furthermore, the rule espoused by appellee [(requiring preservation of the issue to be entitled to application of the new rule on appeal)] would compel counsel to urge upon the trial court every conceivable theory, on the mere chance that, before his case is finally concluded, one such theory might become the law. Since, by hypothesis, the trial court would have to overrule any objection based on his failure to adopt one of these theories, on appeal, the winning party below would be in the same position as the instant appellee. Indeed this requirement would tend to delay justice, for the court below would still have to consider and rule on each theory. Therefore, we are unwilling to conclude that the appellants' failure to interject the rationale of *Griffith* into the trial

constitutes a waiver and precludes them from now seeking the benefit of that decision.

*Id.* (internal citations and footnotes omitted). The *Kuchinic* Court observed, "Since appellants had no knowledge of their right to have this case tried under Pennsylvania law, they could not be deemed to have waived that right." *Id.* at 901 n.9 (citing *Linda Coal & Supply Co. v. Tasa Coal Co.*, 204 A.2d 451, 453 (Pa. 1964)).

After our decision in *Cabeza*, we have relied on *Kuchinic* for the proposition that the failure to preserve a claim in a court below does not preclude application of a new rule of law on appeal. In *Cleveland v. Johns-Manville Corp.*, 690 A.2d 1146 (Pa. 1997), we held, relying on *Kuchinic*, that "where a fundamental change in the law occurs after the lower court enters its order, but before the appellate court rules, the failure to raise the issue in the lower court will not preclude appellate review of that issue." *Id.* at 1151.

This Court has likewise relied upon *O'Connor* to find that there is no preservation requirement for a new rule of law announced during the pendency of the defendant's direct appeal. In *Commonwealth v. Clark*, 266 A.2d 741 (Pa. 1970), for example, we cited *O'Connor* to support our decision that a defendant did not waive his speedy trial argument by failing to raise it below "since the law at the time of his trial did not entitle him to the relief he now seeks." *Id.* at 743-44. *See also Commonwealth v. Cheeks*, 239 A.2d 793, 796 (Pa. 1968) (relying on *O'Connor* to find that the failure to object at trial did not result in waiver as the basis for objection was decided a year later; "[i]t would be manifestly unfair to hold appellant to a waiver when this waiver is alleged to have occurred at a time when neither the defendant nor his attorney had any way of knowing that there existed a right to be waived"); *Commonwealth v. Baity*, 237 A.2d 172, 179 (Pa. 1968) (same).

In his brief before this Court, Hays asserts that the law in Pennsylvania at the time of his trial was "that there was no constitutional right to refuse blood alcohol testing." Hays' Brief at 12 (citing *Commonwealth v. Beshore*, 916 A.2d 1128 (Pa. Super. 2007) (en banc) (relying on case law from this Court to conclude that "under our Implied Consent Law, there is 'no constitutional right to refuse chemical testing'"); *Commonwealth v. Carley*, 141 A.3d 1287 (Pa. Super. 2016) (same, relying on *Beshore*), *rev'd in part pursuant to Birchfield*, 165 A.3d 879 (Pa. 2017)). Hays asserts that because of this existing case law, he had no "legal basis to object or raise the voluntariness of his consent until *Birchfield* was decided," as "[t]he prevailing case law at the time clearly held that individuals did not have a constitutional right to refuse blood alcohol testing." *Id.* at 12-13. Relying on *O'Connor*'s progeny, Hays asserts that under these circumstances, he cannot be found to have waived his Fourth Amendment claim. *Id.* at 14 (quoting *Cheeks*, 239 A.2d at 796).

The *O'Connor/Kuchinic* line of cases irreconcilably conflict with *Cabeza* line of cases.[2] Notably, no case from this Court discusses the two lines of cases or has

---

[2] The Majority cites to two cases that reiterated *Cabeza*'s holding, *Commonwealth v. Sneed*, 899 A.2d 1067 (Pa. 2006), and *Commonwealth v. Tilley*, 780 A.2d 649 (Pa. 2001). *See* Majority Op. at 10-11. In both *Sneed* and *Tilley*, the Court cited to *Cabeza* for the proposition that because the defendant failed to raise a challenge at trial or on direct appeal to the issues subsequently decided in their favor during the pendency of their direct appeal by the United States Supreme Court, they were not entitled to their retroactive application on collateral review. *Sneed*, 899 A.2d at 1075; *Tilley*, 780 A.2d at 652. As both *Sneed* and *Tilley* are appeals in PCRA matters, not direct appeals, they are of limited value, as these cases involve final judgments, brought decades after the rule they attempt to rely on was announced. Moreover, the question of retroactivity of a new case in the collateral context presents an entirely different set of considerations. *See Teague v. Lane*, 489 U.S. 288 (1989). In fact, in *Teague*, the United States Supreme Court recognized the general rule of retroactivity of new case law on direct appeal. *Id.* at

attempted to distinguish them, nor did *Cabeza* overrule *Kuchinic*. Indeed, the *Cabeza* Court did not so much as mention *Kuchinic*, and *Cleveland* did not acknowledge the existence of *Cabeza*.[3]

In my view, we must resolve this conflict. There is ample support for allowing a criminal defendant to benefit from a new rule of law announced while his or her case is pending on direct appeal, regardless of whether the defendant raised the claim prior to the issuance of the new decision. First and foremost, by refusing to allow all defendants to benefit from a new rule of law on direct appeal, we are violating the foundational basis for the *Griffith* Court's decision. In reaching its conclusion that a new rule pertaining to criminal prosecutions is retroactive to all cases pending on direct appeal, the Court observed that "selective application of new rules violates the principle of treating similarly situated defendants the same." *Griffith*, 479 U.S. at 323 (citation omitted). It continued, stating, "[The] failure to apply a newly declared constitutional rule to criminal cases pending on direct review violates basic norms of constitutional adjudication." *Id.* at 322. Additionally, relying on Justice Harlan's concurring opinion in *Mackey v. United States*, 401 U.S. 667 (1971), the *Griffith* Court reasoned:

> If we do not resolve all cases before us on direct review in light of our best understanding of governing constitutional principles, it is difficult to see why we should so adjudicate any

---

304-05. Thus, *Sneed* and *Tilley* do not cabin our ability to apply *Birchfield* retroactively to Hays on direct appeal, despite his failure to preserve the objection before the trial court.

[3] Although the Majority is correct that Hays does not cite to *Cabeza* or advocate for its overruling, he does cite to the *O'Connor* line of cases in support of his claim that he is entitled to retroactive application of *Birchfield*. As this Court has neither recognized nor distinguished between the two lines of cases in the past, I disagree with the Majority that Hays is not entitled to relief on this basis. *See* Majority p. at 10. Further, for the reasons stated throughout this Dissent, I also disagree with the Majority that *Cabeza* is the "well-established law" applicable in this case. *Id.*

> case at all.... In truth, the Court's assertion of power to disregard current law in adjudicating cases before us that have not already run the full course of appellate review, is quite simply an assertion that our constitutional function is not one of adjudication but in effect of legislation.

*Griffith*, 479 U.S. at 323 (quoting *Mackey*, 401 U.S. at 679 (Harlan, J., concurring)).

Second, there is no need for a retroactivity discussion for a defendant that preserved the issue which was subsequently decided favorably in another case while on direct appeal. The same legal basis for granting relief in the case that announced a new rule of law would likewise be applicable to this defendant's case. As aptly stated by the *Cabeza* Court, "The only noteworthy difference between [*Commonwealth v. Scott*, 436 A.2d 607 (Pa. 1981)] and [*Cabeza*] is that *Scott* was argued and decided first. [*Cabeza*] may well have been the case which overruled prior law if *Scott* had not been decided [first]." *Cabeza*, 469 A.2d at 148. In other words, even if *Scott* did not apply retroactively, Cabeza would have been entitled to relief on the same basis in his own right, having raised and preserved the issue below.

Further, and perhaps most significantly, by ruling that a defendant who does not preserve the issue cannot benefit from a new rule decided while his or her case is on direct review, we are foreclosing that defendant from obtaining any relief on a basis that our courts have now found to be error. The law in Pennsylvania is clear that "counsel cannot be deemed ineffective for failing to predict changes in the law." *Commonwealth v. Cousar*, 154 A.3d 287, 303 (Pa. 2017) (citing cases). Thus, counsel who fails to preserve an issue that is subsequently decided in her client's favor is not ineffective for failing to raise it below, and the defendant is not entitled to collateral relief on that basis. It seems incongruous to require trial counsel to be so prophetic as to predict changes in

the law in order for her client to be entitled to benefit from a new rule, but then find that she is not ineffective for failing to do so. In my view, the law cannot both deprive a defendant of a new rule of law announced during the pendency of direct review because counsel waived its application by failing to object and also find that counsel is not ineffective for failing to preserve the issue. This completely closes the courtroom door to a defendant, and there is no other area of the law that removes any avenue for relief for a criminal defendant.

Moreover, the case at bar mirrors the concerns raised in *O'Connor*, *Kuchinic* and their progeny. At the time of Hays' trial, the law provided that a driver who refused to submit to a requested blood test would be criminally punished for his refusal.[4] *See* 75 Pa.C.S. § 1547(b)(1), (2) (effective July 10, 2006 - May 24, 2016).[5] This was based on Pennsylvania's implied consent laws applicable to all drivers. *See id.* § 1547(a). Under this prior version of the statute, police simply needed to inform a driver of the consequences of refusing a blood alcohol test; where a driver was so informed, the consent given for the blood alcohol test was valid. *See Pa. Dept. of Transp., Bureau of Driver Licensing v. Weaver*, 912 A.2d 259, 264-65 (Pa. 2006).

---

[4] If the driver refused to submit to chemical testing and was ultimately convicted under 75 Pa.C.S. § 3802(a)(1) (DUI – general impairment, incapable of safely driving), he would be subjected to a loss of driving privileges and the enhanced penalty provisions applicable to an individual convicted of DUI – highest rate of alcohol (*id.* §§ 3802(c), 3804(c)). *Id.* § 1547(b)(1), (2). The penalties imposed pursuant to section 3804(c) range from "imprisonment of not less than 72 consecutive hours" and "a fine of not less than $1,000 nor more than $5,000" for a first offense to "imprisonment of not less than one year" and "a fine of not less than $2,500" for an offender convicted of a third or subsequent offense. 75 Pa.C.S. § 3804(c).

[5] Following *Birchfield*, the General Assembly amended section 1547 to remove the enhanced criminal sentencing penalties associated with a refusal to submit to a warrantless blood test. *See generally* 75 Pa.C.S. § 1547 (effective January 20, 2018).

Prior to *Birchfield*, this Court had held that a warrant was not required for a blood draw where police had probable cause to suspect that an individual was driving under the influence of alcohol or a controlled substance. In *Commonwealth v. Kohl*, 615 A.2d 308 (Pa. 1992), this Court held that under Article I, Section 8 of the Pennsylvania Constitution, "in instances in which probable cause has been established, the absence of a warrant requirement under the implied consent provisions does not render the blood, breath, and urine tests unreasonable … due to time's dissipating effect on the evidence." *Id.* at 315, *disapproved of based on Birchfield by Commonwealth v. Myers*, 164 A.3d 1162 (Pa. 2017) (plurality). The *Kohl* Court found that 75 Pa.C.S. § 1547(a)(2), a provision contained in a prior version of our implied consent statute, was unconstitutional under both the federal and state constitutions because it permitted a warrantless blood alcohol test based on less than probable cause to believe that a driver of a vehicle was under the influence of alcohol.[6] *Kohl*, 615 A.2d at 314, 315. It further held, however, that section

---

[6] Section 1547(a)(2), which *Kohl* ruled unconstitutional, provided:

> (a) General rule.-Any person who drives, operates or is in actual physical control of the movement of a motor vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a motor vehicle:
>
> \* \* \*
>
> (2) which was involved in an accident in which the operator or passenger of any vehicle involved or a pedestrian required treatment at a medical facility or was killed.

As found by the *Kohl* Court, "The statutory provision does not require any individualized suspicion of alcohol or drug use by the driver." *Kohl*, 615 A.2d at 313.

1547(a)(1) was constitutional because it provided for a warrantless blood draw if police had probable cause to believe that the person was driving under the influence of alcohol or a controlled substance. *Id.* at 315.

Five years later, in response to a Fourth Amendment challenge to the law, a plurality of this Court held that the appellant "had no constitutional right to refuse chemical testing," and where the prerequisites of our implied consent law were met, "no search warrant was necessary" to conduct a blood alcohol test. *Commonwealth v. Stair*, 699 A.2d 1250, 1253-55 (Pa. 1997) (Opinion in Support of Affirmance ("OISA")). Notably, the remainder of the Court did not take issue with this aspect of the OISA; its disagreement was based on its conclusion that the trooper had no authority to arrest the defendant, as the traffic stop occurred in Maryland, not Pennsylvania. *Id.* at 1256-57 (Opinion in Support of Reversal).[7] *See also Commonwealth v. Riedel*, 651 A.2d 135, 139 (Pa. 1994) (holding that under the Fourth Amendment, "where an officer has probable cause to request a blood test pursuant to 75 Pa.C.S. § 3755(a), the failure to verbalize the request shall not bar the officer from obtaining the results of a medical purposes blood test without a warrant"), *disapproved of based on Birchfield by Commonwealth v. Myers*, 164 A.3d 1162 (Pa. 2017) (plurality); *Commonwealth v. Shaw*, 770 A.2d 295, 299 (Pa. 2001) (holding that pursuant to Article I, Section 8, "[t]he implied consent provision of 75 Pa.C.S. § 1547(a)(1) does not eliminate the need to obtain a warrant to seize medical records, but only to request and conduct chemical tests"), quoting *Reidel*, 651 A.2d at 135 (Zappala, J., concurring).

---

[7] Furthermore, this Court denied allowance of appeal in *Beshore*, which held, in reliance on the OISA in *Stair*, held that a defendant has no constitutional right to refuse to consent to a blood test. *See Commonwealth v. Beshore*, 982 A.2d 509 (Pa. 2007).

Both the Commonwealth and criminal defendants operated in reliance upon that law. It was not until the United States Supreme Court issued its decision in *Birchfield* (which occurred one day after Hays' trial[8]) that a change in the law occurred. Now, pursuant to *Birchfield*, a warrantless blood draw is generally unconstitutional, and the illegality is not cured by a state's implied consent law. *Birchfield*, 136 S. Ct. at 2185-86. The Court recognized that the exigent circumstances exception to the warrant requirement may apply, but stated that this question must be considered on a case-by-case basis. *Id.* at 2174. The *Birchfield* Court further held, in pertinent part, that consent cannot be coerced by the threat of enhanced criminal penalties for refusing a blood test. *Id.* at 2186.

As in *O'Connor*, *Kuchinic*, *Clark* and *Cleveland*, Hays had no basis to move to suppress the warrantless blood draw and blood results in his case, as the law in place at the time of his trial did not entitle him to relief on this claim. It was not until the *Birchfield* Court handed down its decision that Hays had a valid basis to advocate for the exclusion of this evidence. As such, pursuant to longstanding precedent of this Court and the United States Supreme Court, his failure to object on this basis does not result in waiver of the claim on direct appeal. *O'Connor*, 385 U.S. at 93; *Kuchinic*, 222 A.2d at 901; *Clark*, 266 A.2d at 743-44; *Cleveland*, 690 A.2d at 1151.

For the foregoing reasons, I disagree with the Majority's conclusion that Hays is not entitled to retroactive application of *Birchfield* because he failed to preserve the issue before the trial court. I therefore respectfully dissent.

---

[8] Hays' trial occurred on June 22, 2016; the high Court decided *Birchfield* on June 23, 2016.

Justices Todd and Wecht join this dissenting opinion.